173 So. 761

**LACOUR PLANTATION CO. et al. v. JEWELL, Clerk of Court, et al.**

No. 34109.

March 29, 1937.

Miguel T. Hewes, of New Roads, and Rene H. Himel, of Franklin, for appellants.

James M. Barnett, of Baton Rouge, for appellee Jasper S. Brock.

ODOM, Justice.

The Lacour Plantation Company executed its promissory note for $6,000 dated June 22, 1925, made payable to itself or order in one year, and in order to secure the prompt and punctual payment of the note it executed a mortgage on its real property, the mortgage importing a confession of judgment. Code Prac. art. 733. The note went into the hands of the Bank of Baton Rouge, which instituted foreclosure proceedings via executiva on February 23, 1927. The usual order was granted and notice of demand was promptly served on the debtor. Nothing further was done. The mortgaged property was never seized.

The Lacour Plantation Company went into the hands of receivers, and the Bank of Baton Rouge was later taken over for liquidation by the State Banking Commissioner. The receivers and the Banking Commissioner are parties to the present proceeding.

On May 25, 1936, the receivers of the Plantation Company ruled the clerk and ex officio recorder of mortgages of Pointe Coupee parish, where the property is situated, and the liquidator of the Bank of Baton Rouge to show cause why the mortgage should not be canceled, the plaintiff in rule alleging that the note was prescribed and that the mortgage had fallen with the note.

The recorder of mortgages and the liquidator of the bank filed exceptions of no cause or right of action, which were overruled. They then filed answers in which they denied that the note was prescribed. After trial of the rule on its merits there was judgment ordering that "said rule be and the same is hereby dismissed and the demands of plaintiff in rule be and the same are hereby rejected."

From that judgment the plaintiffs in rule appealed.

The question presented for our consideration is whether or not, under the circumstances here shown, the debt evidenced by the note and secured by the mortgage was extinguished by prescription when this proceeding was brought, it being conceded by counsel for the liquidator that if it was, there should have been judgment ordering the mortgage canceled. The note evidencing the debt was prescribed on its face.

On the trial of the rule the liquidator of the bank filed in evidence the original record of the foreclosure proceedings

brought by the bank on February 23, 1927. This record consists of the bank's petition for executory process sworn to by its attorney, to which was attached the note and a certified copy of the mortgage importing a confession of judgment, together with the court's order, which reads as follows:

"Considering the above and foregoing petition and the documents annexed, It is ordered that executory process issue herein as prayed for and according to law."

The petition was filed on February 23, 1927, and the order was signed the same day. The record filed contains also a notice of demand to pay, issued in the usual form by the clerk of court on the same day, and the sheriff's return thereon, which shows that he received the notice on February 24, 1927, and on the same day served the notice to pay, together with a certified copy of the petition and order, on Ovide B. Lacour and T. J. Bartlett, coreceivers of the planting company. The property was never seized by the sheriff. In fact, it is shown that no writ of seizure and sale was ever issued. The only step taken after the order was signed was the issuance by the clerk of the notice and demand to pay and the service thereof by the sheriff on the receivers. The liquidator of the bank offered no other evidence and none was offered by the plaintiff in rule except the note, which was prescribed on its face. So that according to the record, the last step taken in the foreclosure proceeding brought by the bank was on February 24, 1927, when the sheriff served notice of demand to pay on the receivers. So far as the record discloses, it is certain that neither the debtor nor any one else ever at any time resisted or hindered in any way the bank's foreclosure proceeding.

The note which evidenced the debt was dated June 22, 1925, and fell due one year later. Therefore, five-year prescription began to run on June 22, 1926, the date on which the note was payable. Civ.Code, art. 3540. But it is conceded by both sides that the running of prescription on the note was interrupted on February 24, 1927, by the institution of the foreclosure proceeding and service of the notice of demand to pay, and that prescription de novo began to run on that date; that the service of notice of demand to pay marked the beginning of a new prescriptive period.

 The theory advanced by counsel for the debtor, plaintiff in rule, is that the obligation was extinguished by the prescription of five years dating from February 24, 1927, the date on which notice to pay was served; that the prescriptive period applicable is five years, as provided in article 3540 of the Code, which provides that actions on promissory notes "are prescribed by five years, reckoning from the day when the engagements were payable."

Counsel for the liquidator of the bank, defendant in rule, contends, on the contrary, that the prescriptive period applicable is ten years, as provided in article 3547 of the Civil Code, which says that "All judgments for money, whether rendered within or without the State, shall be prescribed by the lapse of ten years from the rendition of such judgments." His argument is that the effect of the executory proceeding begun by the bank was to change the

prescriptive period from five to ten years. We understand that he concedes that if the ten-year prescriptive period is not applicable, the five-year period is.

The only theory which could possibly support the argument that the ten-year prescriptive period is applicable to a case of this kind is that a decree for executory process is a judgment in the true sense. Such theory finds no support either in the Code of Practice or in the jurisprudence.

"Judgments in civil cases are rendered by default, or after hearing the parties" (Code Prac. art. 533) which means that they are rendered only after issue is joined. In executory proceedings where the right "arises from an act importing a confession of judgment" (Code Prac. art. 732) the order is signed by the judge or clerk of court without issue joined, and without hearing the parties. Article 734 of the Code of Practice provides that "When the creditor is in possession of such an act, he may proceed against the debtor or his heirs, by causing the property subject to the privilege or mortgage to be seized and sold, on a simple petition, and without a previous citation of the debtor," and article 63 of the Code of Practice provides that when a creditor, besides his hypothecary right, "has against his debtor a title importing a confession of judgment, he shall be entitled to have the hypothecated property seized immediately and sold for the payment of his debt." It is important to note that the creditor may proceed against the debtor without a previous citation and that he may have the property seized immediately and sold.

It is fundamental that a "judgment" rendered without a previous citation and without issue joined is an absolute nullity. A "judgment" in the true sense is the final determination of the rights of the parties in an action. An order or decree for executory process is in no sense a final determination of the rights of the parties, because the Code of Practice specifically provides that the debtor against whom this "order of seizure" (not "judgment") shall have been rendered "may obtain an injunction to suspend the sale, if before the time of sale he files in the court issuing the order his opposition in writing, alleging some of the reasons contained in the following article and of which he shall swear to the truth." Code Prac. art. 738.

Article 739 sets out the reasons the debtor may allege for arresting the sale, among them being that he has paid the debt, that it has been remitted by the creditor, that it has been extinguished in some legal manner, that time has been granted to him for payment of the debt, that the act containing the privilege or mortgage is forged, etc. The debtor who makes such allegations is entitled to a hearing on them in court in order that he may prove them if he can. He cannot be condemned without such hearing. The order for seizure and sale of the debtor's property does not preclude his defenses, which may be set up at any time up to the day set for the sale of the property. So that the order is not final. It is in no sense a final determination of the rights of the parties, and, therefore, not a judgment.

Now referring to the jurisprudence, we find that this court has repeatedly and con-

sistently held that such an order is not a judgment. In the case of Mitchell v. Logan, 34 La.Ann. 998, Justice Poché, speaking for the court, in discussing the question whether orders of seizure and sale issued in executory proceedings are "judgments" in the legal sense of that term, used the following very strong language (page 1003):

"It would be difficult to conceive of a more absolute legal fallacy, and an examination of the authorities cited in support of plaintiffs' counsel, satisfies us that this legal heresy finds no foundation in our jurisprudence."

In support of the above statement he assigned the following reasons:

"To the assertion that 'every element of a judgment enters into the executory process,' the legal mind suggests a ready and easy answer: that the executory process lacks the following elements of a judgment:

"1. It is not preceded by citation, the foundation of a judgment.

"2. It creates no issue.

"3. It decides no issue, and requires no answer or no default.

"4. It adjudicates to the plaintiff no right which is not secured by his notarial act, nor deprives him of any thus secured.

"5. Its inscription in the mortgage office will, therefore, operate no judicial mortgage.

"6. If the property mortgaged, and seized and sold under it, does not bring a price sufficient to satisfy the amount of the claim, the creditor cannot issue execution on such balance without first obtaining judgment thereon, contradictorily with his debtor.

"7. It cannot support the plea of res judicata or lis pendens.

"Other differences could be enumerated, but it would be an idle task, as we consider the point well settled in our jurisprudence, which recognizes in such orders but one element of a judgment, namely, the right of appeal, which can be taken either from the order of the Judge or from his refusal to grant the process."

In Folger v. Roos, 40 La.Ann. 602, 4 So. 457, Chief Justice Bermudez, organ of the court, said:

"A decree for executory process is not a judgment, in any sense of the word, within the meaning of the authorities cited; for it decides nothing,—no more than an order for a conservatory writ of any description. It has been held to be a judgment only so far that an appeal lies from it in a proper case. * * *

"It is therefore strictly no judgment. It is simply an ex parte order in rem, granted at chambers, without any previous hearing or notice to the ostensible owner of the property directed to be seized and sold to satisfy the debt acknowledged in the authentic form."

In McCoy v. Hunter, 167 La. 1032, at page 1036, 120 So. 767, 768, a case decided more than forty years later, Justice Overton, speaking for the court, said:

"An order granting executory process is not, in a true sense, a judgment. It decides no issue. It adjudicates to the plaintiff only what is secured to him by his au-

thentic act of mortgage, and does not deprive him of any right so secured. It is rendered ex parte, and cannot support a plea of res judicata, or one of lis pendens. The only element of a judgment in such an order is the right of appeal. Mitchell v. Logan, Sheriff, 34 La.Ann. 998, 1003. See, also, Harrod v. Voorhies' Adm'x, 16 La. 254, 256; Folger v. Roos, 40 La.Ann. 602, 604, 4 So. 457, 458."

Executory proceedings are governed by special rules laid down in the Code of Practice under the general heading: "Of Executory Process," Article 732 et seq. The purpose of this special proceeding is discussed in the case of Lotz v. Iberville Bank & Trust Co., 176 La. 579, 146 So. 155, 157, where we said:

"It is manifest that the purpose of these and other related articles of the Code with reference to foreclosure proceedings is to put promissory notes secured by mortgages importing a confession of judgment in a class to themselves, to give them exceedingly high rank as securities, and make them attractive to investors. To give them this rank and to make them attractive, not only is the holder of them given the highest ranking pledge on the real estate encumbered, but he is afforded a simple, easy, and speedy method of realizing on the collateral. He may seize and sell the pledged property to satisfy his claim without previous citation to the debtor, the only notice required being three days. And this need not be served on him unless present. To obtain the order to sell the creditor is not required to make proof of his claim in a judicial proceeding after issue joined as in ordinary proceedings. All he need do is to present his application to seize and sell the property to the judge with the notes and a certified copy of the mortgage and the order is granted ex parte. This is because the mortgagor in the act of mortgage itself confesses judgment and publishes to the world that he owes the debt and that he will do no act to hinder or retard the collection of the debt or to impair the security."

We therefore find no merit in the argument that the ten-year prescriptive period is applicable to this case. But the five-year prescriptive period is applicable. The note, not being merged into a judgment by the foreclosure proceedings, remained as evidence of the debt and continued to have legal existence as such. In cases of this kind, if the property seized and sold under the executory process fails to bring an amount sufficient to satisfy the debt, the amount realized from the sale is credited on the note, and thereafter the creditor may obtain judgment under an ordinary proceeding for the balance, using the note as his evidence of the debt in the same manner as if no foreclosure proceeding had been brought, if the sale was not provoked without the benefit of an appraisement. See Act No. 28, Regular Session of 1934, page 186. The note, not being merged into a judgment and not canceled by a foreclosure proceeding, continues to be a "promissory note," and the prescriptive period of five years as provided in article 3540 of the Civil Code applies. Harrod v. Voorhies' Adm'x, 16 La. 254; Erwin v. Lowry, 2 La.Ann. 314, 46 Am.Dec. 545; Rhea v.

Taylor, 8 La.Ann. 23; Ealer v. Lodge, 36 La.Ann. 115.

It has been held, however, that a debtor against whom an executory proceeding has been brought and who unlawfully uses the processes of the court to restrain the creditor from the prosecution of his right, cannot avail himself of the time which elapsed while the creditor was thus hindered to defeat the action by the plea of prescription. Stanbrough v. McCall, 4 La.Ann. 322; Harvey v. Pflug, 37 La.Ann. 904; Tertrou v. Durand, 30 La.Ann. 1108; Williams v. Douglas, 23 La.Ann. 685. In the case at bar, as we have said, the creditor was not hindered or delayed by the debtor or any one else.

■ The trial judge was of the opinion that the executory proceeding in this case interrupted prescription and that the interruption was continuous, basing his holding on the cases of D'Ile Roupe v. Carradine, 20 La.Ann. 244, and Stanbrough v. McCall, supra. The foreclosure proceeding did interrupt the running of the prescription as we have said, but the interruption was not continuous. Stanbrough v. McCall is a leading case and has been cited many times. In that case a holder of a note brought executory proceedings and had service made, and years later, after the note was prescribed on its face, a plea of prescription was filed by the debtor. This plea was overruled by the court, not for the reason that an executory proceeding interrupts prescription continuously, but because the creditor had been hindered for seven years in the collection of his note by unwarranted court proceedings brought by the debtor. The court held that the debtor could not take advantage of the delays caused by him to defeat the creditor's right by the plea of prescription. In D'Ile Roupe v. Carradine, a creditor brought foreclosure proceedings in June, 1858, and service was made by the sheriff on the debtor in person. A writ of seizure and sale was issued and the property was seized, but no sale was effected and the writ was returned by order of the seizing creditor's attorney. Nothing further was done until 1867, when a new writ was issued and was enjoined on two grounds, one of which was "that the writ of seizure and sale could not issue on the judgment of the 10th June, 1858, because it has been prescribed by the lapse of five years."

As to the plea of prescription, the court said:

"The plea of prescription cannot avail; it was interrupted by the order of seizure and sale, duly notified to the plaintiff, as we have lately decided in the case of R. K. Walker & Co. v. R. P. Lee et al., and for the reasons therein given, and the authorities quoted, we are of opinion that the note sued upon is not prescribed."

From this it would seem that the court intended to hold that the interruption of prescription by executory proceedings is continuous, because there is nothing to show that the debtor hindered the creditor in the pursuit of his claim. However, when we examine the authorities cited by the court in D'Ile Roupe v. Carradine in support of its holding, we find that in these cases it was held that the foreclosure proceedings interrupted prescription and that

the reason why the five-year prescription was not sustained was that the debtor had held up the proceeding by injunction. In Walker & Co. v. Lee, 20 La.Ann. 192, cited by the court, it was held that proceedings on an order of seizure and sale which are litigated by the defendant suspend prescription. In that case the debtor enjoined executory proceeding and the case remained in court over a long period of time. After the note had prescribed on its face the debtor pleaded five-year prescription, and the court held that the plea was not good because of the delay brought about by the defendant himself. The court said:

"In the case of Rhea v. Taylor, 8 La. Ann. 23, the defence was made directly as in this case, that the order of seizure and sale under like circumstances did not interrupt prescription, and the decision in Harrod v. Voorhies, 16 La. 254, relied on. The Court, however, adhered to the different ruling made in Stanbrough v. Mc-Call, 4 La.Ann. 322, where the question was elaborately examined, and was reaffirmed in Fortier v. Zimpel, 6 La.Ann. [53] 54. We must consider the question no longer an open one, and hold that prescription has not been acquired in this case."

It is perfectly clear that the case of D'Ile Roupe v. Carradine is authority for only one proposition, which is that executory proceedings followed by service of notice to pay interrupts the running of prescription on the note. This is perfectly clear in the light of the holdings in the very cases cited in support of the court's opinion.

For the reasons assigned the judgment appealed from is reversed, and it is now ordered that the rule to cancel the mortgage be, and the same is, hereby made absolute, and accordingly the recorder of mortgages for the parish of Pointe Coupee is ordered to cancel and erase from the mortgage records of that parish that certain conventional mortgage executed by the Lacour Plantation Company for $6,000 dated June 22, 1925, originally recorded on June 23, 1925, in Mortgage Book volume 30, entry No. 256, and reinscribed in said mortgage records on May 20, 1935, in Mortgage Book 33, entry No. 827, all costs to be paid by defendant in rule.

FOURNET, J., recused.