**52 So.2d 241**

**GREATER NEW ORLEANS HOMESTEAD ASS'N v. BELL et al.**

**No. 39854.**

March 19, 1951.

Frank C. Moran, Jr., New Orleans, for appellant and adjudicatee.

Dresner & Dresner, New Orleans, for plaintiff and appellee.

PONDER, Justice.

The Greater New Orleans Homestead Association instituted foreclosure proceedings via executiva on January 6, 1944 on a mortgage, importing a confession of judgment, on a lot of ground, situated in the City of New Orleans, given to secure the payment of a promissory note signed by Georgia Bell, widow of Joseph Monroe. Notice of demand of payment was served on Georgia Bell on January 17, 1944. No other steps were taken in the proceedings until June 13, 1949, more than five years from the date on which the demand for payment was made, at which time the sheriff served notice of seizure on Georgia Bell. After due advertisement, the property was sold at public sale on September 1, 1949 by the Civil Sheriff for the·

Parish of Orleans to Frank C. Moran, Sr. for the sum of $2,475. Georgia Bell was present at the sale and made no protest against the adjudication. Mr. Moran made a deposit of $247.50 with the sheriff, representing 10% of the purchase price. Mr. Moran made application to the Globe Homestead Association for a loan to pay the balance of the purchase price which was approved but the attorney for the homestead refused to accept the title on the ground that the failure of the Greater New Orleans Homestead Association to take any steps in the prosecution for a period of five years operated as an abandonment of the suit and that the seizure and sale thereafter was null and void under the provisions of Article 3519, Revised Civil Code. Mr. Moran refused to pay the balance of the purchase price.

A rule was taken by the Greater New Orleans Homestead Association against the adjudicatee, Frank C. Moran, Sr., ordering him to show cause why he should not comply with the adjudication. On trial, the lower court maintained the rule and ordered the adjudicatee to pay the balance due on the purchase price and to accept title to the property. The adjudicatee, Frank C. Moran, Sr., has appealed.

The provision in Article 3519, Revised Civil Code relied on by the appellant reads as follows: "Whenever the plaintiff having made his demand shall at any time before obtaining final judgment allow five years to elapse without having taken any steps in the prosecution thereof, he shall be considered as having abandoned the same."

From a reading of this provision of the Civil Code, it is apparent that it applies to suits that are capable of being prosecuted to final judgment.

Executory process is in the nature of a proceeding to execute judgment confessed in an authentic act or to execute a judgment rendered by a different tribunal within the State. See Code of Practice, Article 732. A creditor can proceed under executory process to have the property subject to the privilege of mortgage seized and sold. Code of Practice, Article 734. Judgment in civil cases are those rendered by default or after hearing the parties. Code of Practice, Article 533. A final judgment is one that decides all the points in controversy between the parties and such as to have the force of res adjudicata. Code of Practice, Article 539. The distinction between a judgment and an order of seizure and sale issued under executory process is pointed out in the case of Lacour Plantation Co. v. Jewell, 186 La. 1055, 173 So. 761. It was pointed out therein that executory proceedings are governed by special rules and that a decree for executory process is not a judgment and merely an ex parte order in rem, issued without previous hearing, directing property to be seized and sold to satisfy a debt acknowledged in an authentic act.

It is suggested that it was the intent of the lawmakers that this provi-

sion of the Civil Code apply to all proceedings including executory process. We cannot extend this provision of the Civil Code beyond the clear and unambiguous language used therein to cover executory proceedings under the pretext of seeking the legislative intent. When the legislative intent is clearly expressed, we must follow it.

For the reasons assigned, the judgment is affirmed at appellant's cost.