240 So.2d 727 (1970)
256 La. 974
Karl J. GREMILLION
v.
TRAVELERS INDEMNITY COMPANY.
No. 50314.
Supreme Court of Louisiana.
November 9, 1970.
Dissenting Opinion November 20, 1970.
Stafford, Pitts & Bolen, John L. Pitts, Alexandria, for defendant-appellant.
Holt, Wagner & Lee, Richard E. Lee, Pineville, for plaintiff-appellee.
HAMLIN, Justice.
This matter concerns a plea of prescription filed by defendant Travelers Indemnity Company (hereinafer referred to as Travelers) to plaintiff's suit for damages sustained from fire loss. The trial court overruled the plea of prescription and heard the *728 matter on the merits; it awarded plaintiff $8,000.00. The Court of Appeal affirmed the judgment of the trial court. Appeal was limited to the sole issue of whether the trial judge was correct in overruling the exception of prescription based upon the suit's having been filed two years after the fire. In the exercise of our supervisory jurisdiction, we directed certiorari to the Court of Appeal, Third Circuit, for review of its judgment. Art. VII, Sec. 11, La. Const. of 1921; 228 So.2d 520; 255 La. 236, 230 So.2d 90.
The facts herein are in substance that on December 20, 1966, a frame dwelling, 527 Fulton Street, Alexandria, Louisiana, owned by plaintiff and insured by Travelers, was severely damaged by fire. (Plaintiff claims that it was completely destroyed.) Plaintiff retained the services of a New Orleans attorney for the recovery, under the provisions of his insurance policy, of damages for the fire loss. Some contact was made with Travelers, but no definite action was taken by either the insured or his then employed counsel. Present counsel was thereafter employed and received the following letter from Travelers on December 27, 1968:
 "Dick Lee, Attorney
 "818 Main Street
 "Pineville, Louisiana
 "Re: 484-F-12111
 "Karl Gremillion
 "Fire Loss
 "D/L 12-20-66
"Dear Dick:
"We are attaching a photostat of the policy jacket, which becomes a part of every fire policy such as the one Mr. Karl Gremillion has on his house. We have not as yet received any certified copy of the policy, but I can assure you the certified copy will bear this same policy jacket.
"I call your attention to the next to the last paragraph on the back side of the policy jacket which says, on Line 157 under the caption Suit, it states `No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within twelve months next after inception of the loss.'
"On 3-10-67 we tendered an offer to Mr. Gremillion for conclusion of the loss, but he refused to accept this offer. He was also forwarded a proof of loss on 2-21-67, with instructions to complete and return it. This proof has never been received in our office and we will now take the position that the claim has prescribed.[1]
"If you have any further questions in regards to this claim, please contact us and we will be happy to discuss it with you.
"Best personal regards,
"Yours very truly,
[Sgd] "Ted E. Duggan
 EMA
"Ted E. Duggan "Adjuster
"TED:EMA
"enc."
*729 On January 9, 1969, more than two years after the fire, plaintiff filed suit against Travelers for damages in the sum of $8,000.00, the extent of liability coverage. Also named as defendants were Anthony J. Vesich, Jr., Attorney, and his insurer against errors and omissions in the practice of law, St. Paul Fire & Marine Insurance Company, and an alternative $8,000.00 demand was made against them; they filed declinatory and dilatory exceptions, and the trial court sustained a plea of prematurity and dismissed plaintiff's suit against them.
Travelers pleaded prescription and answered, denying liability because of the averred untimely filing of plaintiff's suit. The trial court dismissed plaintiff's suit against Travelers; it stated that it had authority to dismiss the suit for failure to disclose a cause of action. The trial court said, "The petition does not allege that any of the requirements of the policy had been complied with by the plaintiff nor does it allege any facts upon which the conclusion could be reached that the requirements of the policy were waived, nor is there any allegation upon which an estoppel against the insurer could be based."
A new trial was granted, and the judgment against Travelers, supra, was rendered by the trial court and affirmed by the Court of Appeal.
Travelers contends in this Court that the Court of Appeal erred as a matter of law in construing the statutory prescriptive provision in the standard fire policy, LSA-R.S. 22:691, so as to permit the filing of a suit more than two years after a fire loss. It argues that the question of prescription under a fire policy was confused before the instant suit, but that presently it is more so.
Plaintiff argues that the judgments of the two lower courts are correct and should be affirmed.
The pertinent parts of the instant policy provide:
"Requirements in The insured shall give case loss occurs. immediate written notice to this Company of any loss, protect the property from further damage, forthwith separate the damaged and undamaged personal property, put it in the best possible order, furnish a complete inventory of the destroyed, damaged and undamaged property, showing in detail quantities, costs, actual cash value and amount of loss claimed; and within sixty days after the loss, unless such time is extended in writing by this Company, the insured shall render to this company a proof of loss, signed and sworn to by the insured, stating the knowledge and belief of the insured as to the following: the time and origin of the loss, the interest of the insured and of all others in the property, the actual cash value of each item thereof and the amount of loss thereto, all encumbrances thereon, all other contracts of insurance, whether valid or not, covering any of said property, any changes in the title, use, occupation, location, possession or exposures of said property since the issuing of this policy, by whom and for what purpose any building herein described and the several parts thereof were occupied at the time of loss and whether or not it then stood on leased ground, and shall furnish a copy of all the descriptions and schedules in all policies and, if required, verified plans and specifications of any building, fixtures or machinery destroyed or damaged. * *
"Appraisal. In case the insured and
 this Company shall fail
to agree as to the actual cash value or the amount of loss, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within twenty days of such demand. The appraisers shall first select a competent and disinterested umpire; and failing for fifteen days to agree upon such umpire, then, on request of the insured or this Company, such umpire shall be selected by a judge of a court of record in the *730 state in which the property covered is located. The appraisers shall then appraise the loss, stating separately actual cash value and loss to each item; and, failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, of any two when filed with this Company shall determine the amount of actual cash value and loss. Each appraiser shall be paid by the party selecting him and the expenses of appraisal and umpire shall be paid by the parties equally. [Emphasis supplied.] * * *
"When loss The amount of loss for payable. which this Company may be liable shall be payable sixty days after proof of loss, as herein provided, is received by this Company and ascertainment of the loss is made either by agreement between the insured and this Company expressed in writing or by the filing with this Company of an award as herein provided.
"Suit. No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within twelve months next after inception of the loss."
LSA-R.S. 22:691 provides in part:
"A. The printed form of a policy of fire insurance, as set forth in Subsection F shall be known and designated as the `standard fire insurance policy of the State of Louisiana.'
"B. No policy or contract of fire insurance shall be made, issued or delivered by any insurer, or by any agent or representative thereof, on any property in this state, unless it shall conform as to all provisions, stipulations, agreements and conditions, with such form of policy.
"* * *
"F. The form of the standard fire insurance policy of the state of Louisiana * * * shall be as follows:
"* * *
"Waiver provisionsNo permission affecting this insurance shall exist, or waiver of any provision be valid unless granted herein or expressed in writing added hereto. No provision, stipulation or forfeiture shall be held to be waived by any requirement or proceeding on the part of this Company relating to appraisal or to any examination provided for herein.
"* * *
"SuitNo suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within twelve months next after inception of the loss."
Herein, the Court of Appeal predicated its judgment on the Case of Finkelstein v. American Ins. Co. of Newark, N. J., 222 La. 516, 62 So.2d 820, Nov. 10, 1952, Rehearing denied Dec. 15, 1952. After quoting extensively from Finkelstein, the Court concluded:
"In the present case, it is stipulated that there was no agreement between the plaintiff and the defendant regarding the amount of the plaintiff's loss. The defendant's adjuster testified that the matter was never submitted for arbitration because of the disagreement as to the amount of the loss. This suit was filed 13 days after the defendant company denied liability. Under the holding of Finkelstein, the contractual one-year limitation does not bar this suit, since the plaintiff's cause of action had not accrued before he filed it."
The holding of the Court of Appeal, supra, is that the twelve months limitation clause in the policy does not begin to *731 run until the loss has been agreed upon or an appraiser's award made. This holding is based upon the following holding from Finkelstein, 62 So.2d, at p. 823, "* * * we hold that the twelve month limitation clause in the policy begins to run after the plaintiff's cause of action has accrued by the provisions of the policy, that is, sixty days after ascertainment of the loss either by agreement or by an award made by appraisers as provided for in the policy in case the parties fail to agree."
We are presented with a statutory policy of insurance which plaintiff and Travelers accepted as the contract between them. See, Tracy v. Queen City Fire Ins. Co., 132 La. 610, 61 So. 687, 688. We are asked to interpret the policy provision, "unless commenced within twelve months next after inception of the loss." Simply stated, we are asked to determine when the twelve months limitation begins to run. Herein, as stated supra, more than two years elapsed between the fire, December 20, 1966, and the filing of suit, January 9, 1969. Under Finkelstein, the Court of Appeal held that the twelve months limitation began to run December 27, 1968, when Travelers wrote plaintiff the letter, supra, denying liability.
Initially, we find that LSA-R.S. 22:691 was not correctly interpreted in Finkelstein. This case must be overruled, and we hereby overrule it.
The case of O'Neal v. American Equitable Assurance Co. of New York, La.App., 162 So.2d 384, Certiorari refused by this Court, 246 La. 366, 164 So.2d 357, is distinguishable from the instant case. In O'Neal, there was a lulling of plaintiff which, as we shall find hereinafter, does not exist in the present plaintiff's case.
A provision such as is contained in the present policy, "unless commenced within twelve months next after inception of the loss," is valid. Guccione v. New Jersey Ins. Co. of Newark, N. J., La.App., 167 So. 845;[2] Stansbury v. Smith, Ky., 424 S.W.2d 571. "Inception" is defined in Webster's New World Dictionary, College Edition, as "a beginning or being begun; start; commencement.SYN. see origin." We are constrained to conclude that the phrase "inception of the loss" means the time of the fire and not the time of the ascertainment of the loss from fire damage. It is to be noted that the limit of twelve months is not in the language of the insurance company; it is the language of the Legislature and expressed in words which the statute supra requires to be inserted in the policy, word for word, line for line, number for number. Ramsey v. Home Insurance Company, 203 Va. 502, 125 S.E. 2d 201, April 23, 1962.
"Where the legislative intent is clearly expressed the Courts must follow it. Arkansas Oak Flooring Company v. Louisiana & A. Railway Company, 5 Cir., 166 F.2d 98, cert. den., 334 U.S. 828, 68 S.Ct. 1338, 92 L.Ed. 1756; Greater New Orleans Homestead Association v. Bell, 219 La. 41, 52 So.2d 241. This is certainly not such an unjust or inequitable requirement as would justify the court in departing from the plain language of the statute." State Through Dept. of Highways v. Jackson Brewing Company, La.App., 146 So.2d 504, 510. A plaintiff whose property has been damaged by fire has sixty days under the present policy to file his proof of loss; an extension of time may be granted. The insurer is granted sixty days to pay the plaintiff's claim after the filing of the proof of loss. The instant policy and the statute supra are clear and free from ambiguity. They express the legislative intent that suit for fire loss must be brought within twelve months next after inception of the loss, which, as stated supra, is the date of the fire. See, 44 Am.Jur.2d Insurance, Sec. 1911, et seq; 95 A.L.R.2d pp. *732 1023-1029; Peloso v. Hartford Fire Insurance Company, July 10, 1968, 102 N.J. Super. 357, 246 A.2d 52, 105 N.J.Super. 474, 253 A.2d 183.
Herein, interrogatories propounded to a representative of Travelers show that said insurer offered plaintiff $6,145.00, partial loss. This figure was arrived at through the assistance of Hayes-Huffman, Pineville, Louisiana. Travelers was not furnished a detailed report. As stated supra in the undenied quoted letter of Travelers to plaintiff's present counsel, plaintiff never furnished his insurer a proof of loss when requested to do so. There is no showing that there was a written waiver of time, and there is no showing that the plaintiff was lulled into any belief that he would receive an amount satisfactory to him. Cf. Brocato v. Sun Underwriters Ins. Co. of New York, 219 La. 495, 53 So.2d 246; Peloso v. Hartford Fire Insurance Company, supra. There is no showing of any fraud on the part of Travelers, and there is no showing that either plaintiff or Travelers believed that prescription was waived. Cf. Sager Glove Corporation v. Aetna Insurance Company, 7 Cir., 317 F.2d 439; Fratto v. New Amsterdam Fire Insurance Co., 3 Cir., 359 F.2d 842. Under such facts and circumstances, Travelers was entitled to rely on its contract and hold its insured to the obligation to file suit timely. Cf. Bollinger v. Texas Company, 232 La. 637, 95 So.2d 132, 137.
We conclude that plaintiff's suit was not timely filed within the limits of the policy and within the deadline established by LSA-R.S. 22:691, supra. The plea of prescription filed by Travelers therefore has merit and must be maintained.
The case of Muse v. Heine, La.App., 189 So.2d 40, 249 La. 734, 190 So.2d 241, is not apposite. Therein, a mortgagee was involved. We are not concerned with a mortgagee in the instant matter.
For the reasons assigned, the judgment of the Court of Appeal, Third Circuit, is reversed and set aside. The plea of prescription is maintained, and plaintiff's suit is dismissed at his costs.
TATE, J., recused.
SUMMERS, Justice (dissenting).
I would not overturn the decision in Finkelstein v. American Ins. Co. of Newark, N. J., 222 La. 516, 62 So.2d 820 (1952), arrived at by this Court after a deliberate recognition of the conflicting interpretations applied by the courts to the suit prescription provision of the policy. No clear or compelling reason has been assigned for this reversal of the Court's position; and I suggest there are none. Rather, the precedent of the Finkelstein Case, I believe, is the better of the two views. See also O'Neal v. American Equitable Assurance Co., 162 So.2d 384 (La.App.1964), cert. denied, "* * * No error of law," 246 La. 366, 164 So.2d 357 (1964); 2A Appleman, Insurance Law and Practice, § 11611 (1963); 18 Couch on Insurance 2d, § 75:88 (1968).
The effect of the decision in this case is to isolate one provision of the policy and to apply a strict interpretation to that provision in utter disregard of all other policy provisions contrary to the mandate of Article 1955 of the Civil Code which directs that "All clauses of agreements are interpreted the one by the other, giving to each the sense that results from the entire act."
There is, moreover, an element of estoppel involved here which has received no attention from the Court. For instance, it is evident from the insurance company's letter of December 27, 1968 rejecting the claim that negotiations for a settlement had been underway until that time (long after the one-year period had elapsed), and the inference is inescapable that plaintiff relied upon this understanding. Only the letter broke off those negotiations, after which suit was filed promptly, within days. This confirms my view that plaintiff and defendant understood from the *733 circumstances that the company would not and could not invoke prescription under the rule of the Finkelstein Case while the parties were mutually engaged in negotiations in an attempt to ascertain the amount of the loss, there being no doubt that an actual loss did in fact occur. Since the provisions concerning proof of loss and time for filing suit are inserted for the benefit of the insurer, the insurer may, and did, effectively waive those provisions by continuing with these protracted negotiations tending toward an agreement on the extent of the loss prior to and long after one year after the storm damage.
I respectfully dissent.
NOTES
[1] The contents of this letter are not denied. Testimony adduced upon the hearing of the exception of prescription, February 14, 1969, recites in part:

"Q. Mr. Dugan, did your company ever reach an agreement with Mr. Gremillion with reference to settlement of his claim against Travelers for the fire loss?
"A. To the best of my knowledge, no, weas far as I'm concerned, here in Alexandria area, we submitted to our New Orleans Claims Office the necessary documents and figures.
"MR. PITTS: We will stipulate no agreement was ever reached, that's why the lawsuit was filed, Your Honor.
"Q. Was any award ever made, was it ever put in arbitration?
"A. Not that I know of.
"Q. And no award was ever made by any arbitrator in this matter?
"A. No."
[2] The Guccione Case was concerned with an insurance policy which contained a stipulation similar to that herein involved.

The Court held the stipulation valid but found that prescription had been interrupted by the filing of suit.