328 So.2d 105 (1976)
P.O.P. CONSTRUCTION COMPANY
v.
STATE FARM FIRE AND CASUALTY COMPANY.
NO. 56910.
Supreme Court of Louisiana.
February 23, 1976.
*106 David L. Dawson, Jr., Baton Rouge, for plaintiff-applicant.
Anthony J. Clesi, Jr., Lane & Clesi, Baton Rouge, for defendant-respondent.
DENNIS, Justice.
This is a suit on a fire insurance policy.
On March 25, 1973, a house located at 5472 Dickens Drive, Baton Rouge, Louisiana, owned by Mr. and Mrs. Rodney B. Powell, and insured by State Farm Fire and Casualty Company, was destroyed by fire. State Farm paid a holder of a mortgage on the property, American Bank & Trust Company, the sum of $35,000.00 on September 12, 1973. Although the Powells filed a timely proof of loss claim, State Farm did not make payment on their claim. The assignee of the Powells, P.O.P. Construction Company, filed this suit asserting the claim on April 11, 1974. State Farm pleaded prescription and denied liability because of untimely suit. The trial court sustained State Farm's exception of prescription based on the fact that the action was not commenced within twelve months next after inception of the loss, as required in the policy and by statute. This ruling was affirmed by the court of appeal, and we granted certiorari to consider whether it was correct.
The issues presented for review are:
(1) Did prescription commence to run on the date of the fire? and
(2) Was the running of prescription waived by the payment made to the mortgagee under the loss payable clause?

1.

Prescription
The policy was written in conformity with La.R.S. 22:691 and provides:
"The amount of loss for which this Company may be liable shall be payable sixty days after proof of loss, as herein provided, is received by this Company and ascertainment of the loss is made either by agreement between the insured and this Company expressed in writing *107 or by the filing with this Company of an award as herein provided.
"No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within twelve months next after inception of the loss."
Plaintiff contends that "inception of the loss" refers not to the actual casualty but to the accrual of liability under the policy. It is argued that prescription should not run against the insured during the sixty day period provided for the insurer to pay the loss since during this time the insurer is clothed with immunity from suit. Under the construction urged by plaintiff, the twelve month limitation clause in the policy would begin to run sixty days after ascertainment of the loss.
In Gremillion v. Travelers Indemnity Company, 256 La. 974, 240 So.2d 727 (1970), we expressly overruled the case of Finkclstein v. American Insurance Co. of Newark, N.J., 222 La. 516, 62 So.2d 820 (1952) which had adopted the construction urged by plaintiff. We noted that the limitation provision is not in the language of the insurance company; it is in the language of the legislature and expressed in words which the statute requires to be inserted in the policy. Therefore, the phrase should not be construed liberally in favor of the insured, but must be interpreted according to the principles of statutory construction, without leaning toward one side or the other. We conclude that the most reasonable interpretation of the provision is that arrived at in the Gremillion case where we said:
"Inception" is defined in Webster's New World Dictionary, College Edition, as `a beginning or being begun; start; commencement.SYN. see origin.' We are constrained to conclude that the phrase "inception of the loss" means the time of the fire and not the time of the ascertainment of the loss from fire damage." 240 So.2d 727, at p. 731.
Our opinion is bolstered by a review of the legislative history of the provision in question. La.R.S. 22:691 is modeled after the New York Standard Fire Insurance Policy of 1943. The explanation of the language in that policy and its proper construction are to be found in Margulies v. Quaker City Fire & Marine Insurance Co., 276 App.Div. 695, 97 N.Y.S.2d 100 (1950). Prior to 1943, the standard fire insurance policy provided that no suit or action on the policy should be maintained "unless commenced within twelve months next after the fire." A number of decisions interpreted this clause to mean that it was not necessary to bring an action within twelve months after any other type of casualty covered by the policy, for instance, damage by lightning. Consequently, the suit clause in the standard policy was changed in 1943 to provide that no suit could be maintained "unless commenced within twelve months next after inception of the loss." The New York courts found that the legislature intended the limitation to commence from the date of the destructive event, as it had under the previous wording:
"Do the words "inception of the loss" mean the date of the happening of the loss or damage out of which the claim arose? It is clear from the history of the limitation provisions in standard fire insurance policies that the use of the words `inception of the loss' was intended to refer to the occurrence of the event giving rise to the claim of liability and not to the accrual of liability. `Inception of the loss' was used in the 1943 standard fire insurance policy in the sense that `after the fire' was used in the standard fire insurance policy prior to *108 1943, except that it was to apply also to additional coverages by indorsements on the 1943 standard fire insurance policy." Margulies v. Quaker City Fire & Marine Insurance Co., supra, 97 N.Y.S.2d at 104.
In addition, it was found that the legislature had expressed its intent clearly:
"But the intention of the draftsmen of the standard fire insurance policy form does not alone suffice unless words are used that fairly and reasonably make that intention clear to the ordinary business man who purchases a policy of insurance. Although perhaps more apt language could have been used, it must be borne in mind that extended coverage authorized by the statute might deal with a wide variety of types of insurance and that the draftsmen of the 1943 statutory form sought, by the language they employed, to have the period of limitation start from the occurrence of the casualty, the event or the situation, whatever it might be, that was insured against. We believe that the words `inception of the loss' convey that intention with reasonable clarity. "Inception' means the beginning, the commencement, the origination.
"Inception of the loss" is equivalent to the occurrence of the casualty or event insured against." Id.
The great majority of courts which have considered the issue adhere to the position taken in Gremillion. See, Adams v. Northern Ins. Co., 16 Ariz.App. 337, 493 P.2d 504 (1972); Bollinger v. National Fire Ins. Co., Cal., 147 P.2d 611, subsequent op. on reh. 25 Cal.2d 399, 154 P.2d 399 (1944); Bell v. Quaker City Fire & Marine Ins. Co., 230 Or. 615, 370 P.2d 219 (1962); Boyd v. Bankers & Shippers Ins. Co., 245 N.C. 503, 96 S.E.2d 703 (1957);Longe's Estate v. Assurance Co. of America, 107 N.Y.S.2d 961 (1951 Sup.); McGuire v. Continental Ins. Co., 39 Mich.App. 612, 197 N.W.2d 846 (1972); Margulies v. Quaker City Fire & Marine Ins. Co., 276 App.Div. 695, 97 N.Y.S.2d 100 (1950); Olson Enterprises, Inc. v. Citizens Ins. Co., 255 Iowa 141, 121 N.W.2d 510 (1963); Ramsey v. Home Ins. Co., 203 Va. 502, 125 S.E.2d 201, 95 A.L.R.2d 1019 (1962); Rottier v. German Ins. Co., 84 Minn. 116, 86 N.W. 888 (1901); Skylark Enterprises, Inc. v. American Central Ins. Co.,13 A.D.2d 707, 214 N.Y.S.2d 68 (1961); Stansburg v. Smith, 424 S.W.2d 571 (Ky.1968); Townsend v. Milwaukee Ins. Co., 15 Wis.2d 464, 113 N.W.2d 126 (1962); Wever v. Pioneer F. Ins. Co., 49 Okl. 546, 153 P. 1146 (1915); 95 A.L.R.2d 1023. But see, Fireman's Fund Insurance Co. v. Sand Lake Lounge, 514 P.2d 223 (Alaska 1973); and Peloso v. Hartford Fire Ins. Co., 56 N.J. 514, 267 A.2d 498 (1970). Plaintiff has advanced no clear or compelling reason why we should overturn the decision, and since it is the established jurisprudence of our state, we will continue to follow it.

2.
Waiver of the running of prescription
Plaintiff contends that State Farm's payment of the mortgage indebtedness to American Bank lulled it into a false sense of security that its claim would be paid. Accordingly, it argues that State Farm thereby waived the prescriptive period in the policy.
There is authority for finding a waiver where an insurance company has indicated by its conduct that it would not invoke the limitation provision. Brocato v. Sun Underwriters Ins. Co. of New York, 219 La. 495, 53 So.2d 246 (1951); O'Neal v. American Equitable Assurance Co. of New York, 162 So.2d 384 (La.App.2d Cir. 1964); Gremillion v. Travelers Indemnity Company, 256 La. 974, 240 So.2d 727 (1970).
*109 However, these authorities are inapposite to the present case because the record is devoid of any evidence which would support a finding that plaintiff had been misled by State Farm's action. Payment was made under the option provided in the policy:
"If this Company shall claim that no liability existed as to the mortgagor or owner, it shall, to the extent of payment of loss to the mortgagee, be subrogated to all the mortgagee's rights of recovery, but without impairing mortgagee's right to sue; or it may pay off the mortgage debt and require an assignment thereof and of the mortgage."
Nothing in this action indicated either that the time limitations were being waived or that payment would be forthcoming without the necessity of filing suit.
For the reasons assigned, we affirm the judgments of the courts below maintaining defendant's plea of prescription.
SUMMERS, J., concurs with reasons.
TATE, J., joins in the concurring opinion of SUMMERS, J.
SUMMERS, Justice (concurring).
In 1970, by the decision in Gremillion v. Travelers Ins. Co., 256 La. 974, 240 So.2d 727, this Court overruled Finkelstein v. American Ins. Co., 222 La. 516, 62 So.2d 820, which had stood as the law of this State since 1952. I dissented in the Gremillion Case because it reversed the then settled law. Although I still believe the Finkelstein Case represents the better rule, I subscribe to this decision in the interest of stability in the law.