SAMUEL, Judge.
Plaintiff filed this suit on a fire insurance policy against Security Insurance Company of Hartford, the insurer, and Rosenthal Agency, Inc., the agency from which the policy was purchased. Plaintiff claims: Security had issued a $5,000 policy insuring the contents of plaintiff’s place of business located on N. Claiborne Avenue in the City of New Orleans; a dwelling located on Frenchmen Street directly behind the N. Claiborne Avenue property had been remodeled, its use as a dwelling was discontinued and it was being used as a part of the corporate business; on December 7, 1972 Stan Rosenthal, president of Rosenthal Agency, personally inspected the property and determined the Frenchmen Street structure was no longer being used as a dwelling but had become part of the corporate bakery business, thus bringing the contents within the coverage of the corporate policy; and on December 25, 1972 the contents of the structure were damaged by fire in an amount far exceeding the limits of the policy. Suit was filed on January 22, 1974 for $5,000, plus penalties and attorney’s fees.
*760 Security filed an exception of prescription of one year to the petition. At the hearing of the exception, documentary evidence[1] was introduced along with the testimony of Warren Gambino, Sr., Phillip T. Hager (Gambino’s attorney), and Stan Rosenthal. After the hearing, there was judgment maintaining the exception and dismissing plaintiff’s suit as to Security. Plaintiff has appealed.
The record establishes that Rosenthal drew up a general change endorsement after inspecting the property on December 7, 1972 but did not submit the endorsement to Security at that time because the Louisiana Fire Prevention Rating Bureau asked him to wait until the entire remodeling was completed so they would not have to inspect the building twice. Thus, Ro-senthal had not contacted the insurer prior to the December 25 fire.
After the fire, Gambino contacted his attorneys and was in touch with Rosen-thal who told Gambino he could handle the matter without the necessity of Gambi-no retaining attorneys. Gambino then instructed his attorneys to withdraw from the matter. After various negotiations on Rosenthal’s part, plaintiff ultimately received $95,000 of the $100,000 fire policies.[2] However, Security refused to pay for the contents of the Frenchmen Street building because the corporate policy had not been amended. Rosenthal was of the opinion that since he, as Security’s agent, had knowledge of the change prior to the fire, Gambino was entitled to recover the contested $5,000.
On February 6, 1973, K. R. Phillips, Jr., a defendant insurance adjuster, wrote to Gambino enclosing a check for $40,000 representing payment of Security’s share of the risk. The letter stated no allowance was made for the contents of the Frenchmen Street building, but that signing the proof of loss and subrogation receipt would not constitute a release or waiver of any claim Gambino might have relative to the contents of the Frenchmen Street building. On February 26, 1973, Rosenthal wrote to Gambino stating he had received a $15,000 check from another insurance company, was waiting for a check 'from Security which should be forthcoming, and was in the process of negotiating with Security for the additional $5,000.
On April 5, 1973, Rosenthal wrote to a Mr. McBee (the Security claims manager) stating that in his opinion coverage was provided under the Security policy because of the fact that he (Rosenthal), as Security’s agent, had inspected the premises three weeks prior to the loss. Thereafter, on August 24, 1973, Gambino received a letter from McBee enclosing a draft for $1,-666.66 to compromise the matter. It was Security’s position that no additional applicable coverage remained unused and that the payment was not an admission that any amounts were owed. The draft was tendered without prejudice to any rights Gambino might have under the policy. The letter explained there was $30,000 coverage on the contents issued by three insurance companies with Security’s share being one-third of the total contents. Consequently, the check for $1,666.66 represented one-third, or Security’s share of the $5,000.
On September 14, 1973, Rosenthal wrote to McBee informing him of his negotiations with Gambino. Sometime after receiving the check of August, 1973, Gambino returned to his attorneys and on November 8, 1973 they wrote McBee returning the Se *761 curity check with the information that if a check in the amount of $5,000 was not forwarded to the attorneys’ office within ten days, suit would be filed for that amount, plus penalties and attorney’s fees. As we have said, this suit was filed on January 22, 1974.
In this court, appellant contends: (1) The matter has not prescribed because plaintiff’s loss occurred on the date the company denied reimbursement,[3] rather than the date the fire occurred;[4] and, alternatively, (2) appellant cannot plead prescription because it lulled plaintiff into believing the claim would be paid.
Plaintiff's first contention is based upon the first of two diametrically opposed Supreme Court cases, Finkelstein v. American Ins. Co. of Newark, N.J., [5] and Gremillion v. Travelers Indemnity Company.[6] In Finkelstein the plaintiff sustained hurricane damage on September 19, 1947 and suit was filed September 27, 1948. The question at that time was res nova. It involved an interpretation of the provisions of the insurance code, LSA-R.S. 22:1-1450, which, among many other requirements, make it mandatory for all insurance companies doing business in this state to incorporate in their policies a clause to the effect that no suit for recovery on an insurance policy shall be entertained in any court unless commenced within twelve months next after the inception of the loss, the same clause contained in the policy in this suit. A strict application of the language of that clause would have resulted in sustaining the plea of prescription for the reason that the Finkelstein suit was not instituted until eight days beyond the twelfth month date of the hurricane which caused the damage. The important words in the clause and those which lead to difficulty in interpreting it were “within twelve months next after inception of the loss”.
Citing 29 Am.Jur. Insurance, § 1397, and following an examination of decisions in various courts in the country revealing a conflict, the Supreme Court in Finkelstein concluded it would follow the decisions of the courts which had applied a liberal rather than a literal construction of the limitation clause. It held the twelve month period did not begin to run until after the cause of action had accrued by virtue of some other provisions and requirements of the policy (i. e., sixty days after the ascertainment of loss either by agreement between the insured and the insurance company, or by arbitration as is usually provided for in the policy in case the parties are unable to agree).
In Gremillion, a dwelling was damaged by fire on December 20, 1966, negotiations were conducted over an extended period, and on January 9, 1969, eight days after negotiations between the parties had broken off and more than two years after the fire, plaintiff filed suit against the insurance company. Under the Finkelstein rule as applied to these facts, the suit would have been timely filed. The court, however, concluded that LSA-R.S. 22:691 had not been correctly interpreted in Finkelstein and therefore specifically overruled that case, holding in Gremillion that prescription began to run on the date of the fire.
At the time this matter was submitted, plaintiff argued that because there were only two divergent decisions of the Supreme Court on the subject, and because the composition of the Supreme Court is now different than it was in 1970 when Gremillion was decided, if again presented with the problem the court would overrule Gremillion and return to its original decision in Finkelstein. The answer to this argument is now twofold. First, we are obliged to follow the latest holding of the Supreme Court so that, in the absence of later jurisprudence from that court, we *762 would be required to follow Gremillion; and second, subsequent to the submission of this case the Supreme Court has handed down P. O. P. Construction Co. v. State Farm Fire & Cas. Co.,[7] in which it reaffirmed and followed the conclusion reached in Gremillion.
We find no merit in plaintiff’s second contention. For some time plaintiff may have believed its claim would be amicably settled. But it is clear that after receipt of the $1,666.66 check and accompanying letter in August, 1973, plaintiff knew it could not look to Security for payment in full of $5,000. The November 8, 1973 letter from its attorneys to Security shows the necessity of filing suit was understood if a check for $5,000 was not forthcoming. Suit could have been filed prior to the one year prescriptive date as required by Gremillion, and the failure of plaintiff to do so cannot be attributed to actions of Security.
For the reasons assigned, the judgment appealed from is affirmed.

AFFIRMED.

. Letters dated February 6, 1973 to Gambino, Sr. from Rosenthal; to Gambino, Jr. on February 5, 1973 from K. R. Phillips, an adjuster representing the insurer; February 26, 1973 to Gambino, Sr. from Rosenthal; April 5, 1973 to Mr. McBee, Security’s claims manager, from Rosenthal; August 24, 1973 to Gambino from McBee; and September 14, 1973 to McBee from Rosenthal; (a certified copy of the policy and the general change endorsement, and a letter of November 8, 1973 from Hager to McBee were introduced by defendant).

. Three different insurance companies shared the risk.

. Phillips’ letter to Gambino of February 5, 1978.

. December 25, 1972.

. 222 La. 516, 62 So.2d 820.

. 256 La. 974, 240 So.2d 727.

. 328 So.2d 105.