730 So.2d 1058 (1999)
Terrell O. WAGNER and Vicki Wagner
v.
William R. MEEKS, Individually and d/b/a Bill Meeks and Associates; the City/Parish of East Baton Rouge, Department of Public Works; Allstate Insurance Company; and ABC Insurance Company.
No. 98 CA 0464.
Court of Appeal of Louisiana, First Circuit.
April 1, 1999.
James S. Holliday, Jr., Baton Rouge, Counsel for Plaintiffs/Appellees, Terrell O. Wagner and Vicki Wagner.
*1059 David C. Forrester, Baton Rouge, Counsel for Defendant/Appellant, Allstate Insurance Company.
Peter G. Carmichael, Baton Rouge, Counsel for Defendant/Appellant, William R. Meeks.
Before: LeBLANC, FOGG and PARRO, JJ.
LeBLANC, J.
This suit arises out of a fire which consumed plaintiffs' house, which was then under construction, and burned it down to the slab. The initial issue in this appeal is whether the trial court erred in not finding that plaintiffs' suit against Allstate, their homeowner's insurer and one of the named defendants, had prescribed. After a thorough review of the record, we find the action against Allstate had prescribed and reverse the judgment of the trial court against it.

Background Facts
In August, 1992, Terry Wagner and Vicki Wagner executed a builder's contract with contractor, William R. Meeks, to construct a new home for them on "Lot 18 White Oak Landing Garden District," a subdivision in Baton Rouge, Louisiana.
In September, 1992, the Wagners obtained a homeowner's insurance policy incorporating builder's risk provisions from Allstate. Also in September, 1992, Meeks began construction of the house. The construction proceeded well and was at the black-in stage, i.e., was framed up and the roofing was being applied, when on October 9, 1992, an arsonist set fire to the structure. The fire consumed the partially constructed house, burning it down to, and including, the slab.
On October 12, 1992, the Wagners met with an Allstate adjuster, Bill Smith, and made a claim for their fire loss. Bill Smith also met with Meeks, who provided Allstate, at Smith's request, with the estimated costs of rebuilding the house; these estimates included the projected costs of recapping the burned slab, as well as a $300 charge for Meeks to have the burned slab tested to determine if the slab was suitable for recapping. The record reveals that such test was never performed; instead, Meeks had civil engineer, Jim Tatum, perform a "walk-by" inspection of the slab.
On October 22, 1992, Allstate issued a check to the Wagners, made payable jointly to the Wagners and Meeks, in the amount of $46,851.81, to cover the estimated costs of rebuilding the house submitted to Allstate by Meeks. Allstate also issued a separate check to the Wagners in the amount of $1,338.00 for additional living expenses occasioned by the delay in construction. Neither the Wagners nor Meeks had any further contact with Bill Smith or Allstate until the filing of this suit.
Construction on the Wagners' home then resumed, beginning with the recapping of the slab, on approximately October 23, 1992. The house was substantially completed in January, 1993, a certificate of occupancy was issued, and the Wagners moved in.
Shortly thereafter, the Wagners began experiencing numerous problems with the house, i.e., cracks in the walls; doors weren't locking properly; windows wouldn't close; window frames were shifting; a shower was leaking; crown molding was coming apart and wallpaper was wrinkling; kitchen cabinets were pulling away from the wall; door frames were pulling away from the brick pavers; the garage door kept coming off the rails; there were cracks in the bricks on the outside of the house; bricks actually falling off the outside walls, etc. After several unsuccessful requests to Meeks to correct the problems, the Wagners sought the help of an attorney, who made formal demands on Meeks to correct the problems. Still unable to have the problems resolved, the Wagners ultimately filed suit on January 28, 1994.

Procedural History
The Wagners filed a "Petition for Fraud, Breach of Contract, and Negligence" against Meeks, Allstate, and the City/Parish of East Baton Rouge, Department of Public Works. Cross claims were filed by both Meeks and Allstate against each other. The City/Parish filed a peremptory exception raising the objection of no cause of action, which was granted by the trial court, dismissing plaintiffs' claim against it. Allstate filed a peremptory exception raising the objection of *1060 prescription, which exception was referred to the merits. A three day bench trial commenced on March 25, 1997.
The trial court found that the house was "having problems" consisting of "differential expansion and contraction of the cap and the foundation," that would continue to cause further problems. The trial court, without making a determination regarding liability[1], concluded that "the best solution would be that the Wagners transfer the house and the lot that they own to Allstate for the cost of rebuilding plus the cost of the lot."
A judgment was subsequently rendered, on August 19, 1997, "in favor of [the Wagners] and against Allstate Insurance Company, and ... in favor of William R. Meeks, dismissing the demand of [the Wagners] as to William R. Meeks." The judgment ordered "that within thirty-seven (37) days Allstate Insurance Company pay to plaintiffs the sum of $166,000.00, together with legal interest from the date of judicial demand until paid; and, within a reasonable time thereafter not to exceed forty-five days, that plaintiffs transfer to Allstate Insurance Company all right, title and interest to the lot and dwelling located at 3923 Indian Run (Lot 18), White Oak Landing District Subdivision, free and clear ... said transfer to be made with no warranty as to condition ...." Allstate was also ordered to pay plaintiffs an additional $2,000.00 for moving expenses. This appeal follows.
Allstate appeals, urging five assignments of error, primarily that the trial court erred in failing to find that the plaintiffs' claim against it had prescribed. Alternatively, it asserts there was no legal or factual basis for imposing liability on Allstate; the trial court erred in treating the homeowner's policy as a performance bond; the trial court erred in utilizing the homeowner's policy to protect the plaintiffs from redhibition; and finally, that the trial court erred in finding the foundation problems were unresolved fire damages rather than contractor error.
The Wagners answered the appeal seeking to have the judgment modified "to reflect the contractual agreement between plaintiffs and Allstate Insurance Company by ordering payment of actual costs for removal and replacement of the damaged dwelling with a new dwelling of equal size and quality, on lot 18...." Although the plaintiffs agree with the trial court's finding Allstate indebted to them, they desire to keep the lot they purchased, and rebuild a home at that same location. The plaintiffs did not appeal any other aspect of the judgment.

Prescription
The form of the standard fire policy is mandatory under Louisiana's Insurance Code. Its provisions are spelled out in detail by the legislature. Grice v. Aetna Casualty and Surety Company, 359 So.2d 1288 (La. 1978). La. R.S. 22:691(F)(2) provides that the standard fire insurance policy shall contain the following language:
SuitNo suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within twelve months next after the inception of the loss. (Emphasis added.)
The phrase "inception of loss" means the time of the fire and not the time of the ascertainment of the loss from fire damage. Gremillion v. Travelers Indemnity Company, 256 La. 974, 240 So.2d 727, 731 (La.1970); P.O.P. Construction Company v. State Farm Fire and Casualty Company, 328 So.2d 105 (La.1976); Grice v. Aetna Casualty and Surety Company, 359 So.2d at 1290.
The policy issued by Allstate to the Wagners appropriately provides, in paragraph 13 at page 22: "No suit or action may be brought against us unless there has been full compliance with all the policy terms. Any suit or action must be brought within one year after the date of loss."
In this matter, the date of the fire loss was October 9, 1992. The petition was filed on January 28, 1994, more than one *1061 year following the date of the fire loss. Therefore, the suit has prescribed on its face and the burden is on the plaintiffs to show an interruption of prescription to avoid dismissal. Griffin v. Audubon Insurance Company, 94-0233, p. 2 (La.App. 1 Cir. 12/22/94); 649 So.2d 72, 73, writ denied, 95-0229 (La.3/17/95); 651 So.2d 279.
The Wagners oppose the exception of prescription on three bases, each of which we have reviewed and find have no merit. First, the Wagners maintain that the action against Allstate is one in negligence, under La. C.C. art. 2315, and that Allstate's failure to rectify the problems in the house constitutes a "continuing tort." This argument fails on the basis that the Wagners' action against Allstate is simply not one in tort; thus, there can be no continuing tort. Allstate insured the Wagners for, among other things, fire loss. Although the Wagners' claim against Meeks may be grounded in tort, their claim against Allstate is a claim on the insurance policy issued to them by Allstate, and the provisions of that policy govern. Further, since a fire policy was incorporated into the homeowner's policy, statutory provisions govern as well, which mandate a one year prescriptive period.
Likewise, we find no merit to plaintiffs' assertion that contra non valentem applied to this situation to suspend prescription until they moved into the house and began to encounter problems with it. According to the Wagners, it was not until that time that their cause of action was known to them. Again, this argument must fail. The record very clearly establishes that on October 16, 1992, when the Wagners were told by Meeks that the slab was going to be recapped, they immediately and adamantly voiced their objection to that method of rebuilding. According to Mr. Wagner, upon hearing of the plans to recap the slab, "[m]y wife went ballistic about that time and I think I did too and she said no way. I don't want that foundation capped at all, and I said I do not either. I think she went so far as to say that she didn't care if they put 14 carat gold on it, she did not want to live on a burnt foundation." Furthermore, according to Mr. Wagner's testimony, he also voiced his strenuous objection to having the slab recapped to Bill Smith on approximately October 19, 1992, when he ran into Mr. Smith at the house site. Nevertheless, the Wagners accepted the check from Allstate on October 22, 1992, knowing that it only provided for the costs of recapping the slab. Therefore, we find if contra non valentem applied at all to suspend the running of prescription, the Wagners knew, or reasonably should have known, at least by October 22, 1992, that they had problems with how Allstate was handling the claim.
Finally, the Wagners assert that their suit against Allstate is one for breach of contract, and that the ten-year prescriptive period applies. This argument fails for the simple fact that it completely ignores both, La. R.S. 22:691 et seq. as well as the policy language in paragraph 13 of the Allstate policy, as noted above.
Therefore, we conclude that plaintiffs' suit against Allstate was not timely filed within the limits of the policy nor within the deadline mandated by La. R.S. 22:691(F)(2). Further, plaintiffs have failed to show a valid interruption of prescription. Allstate's plea of prescription has merit and should have been maintained by the trial court. Accordingly, the exception is hereby maintained and the trial court's judgment against Allstate is vacated. It is now unnecessary to address plaintiffs' answer to the appeal seeking to modify the judgment against Allstate.
Unfortunately, plaintiffs have not preserved their claim against Meeks; the judgment dismissing their action against him has not been appealed, and is hereby final. Costs of this appeal are assessed to plaintiffs.
EXCEPTION OF PRESCRIPTION MAINTAINED; JUDGMENT VACATED IN PART.
NOTES
[1] Instead of making a finding on liability, the trial court stated, "I don't see any bad people. Everybody did what they thought was best at the time and it didn't work quite like everyone thought it would."