336 So.2d 894 (1976)
Albert BLUM
v.
CHEROKEE INSURANCE COMPANY.
No. 7333.
Court of Appeal of Louisiana, Fourth Circuit.
May 18, 1976.
Order Granting Rehearing July 29, 1976.
On Rehearing September 14, 1976.
*896 Edward S. Bopp and Ronald A. Welcker, Arabie, for plaintiff-appellee.
Emile L. Turner, Jr., New Orleans, and Malcolm B. Robinson, Jr., Metairie, for defendant-appellant.
Before REDMANN, LEMMON, GULOTTA, STOULIG and SCHOTT, JJ.
LEMMON, Judge.
The principal issue in this appeal is whether plaintiff's suit against his insurer for hail damage to his residence was timely filed.
The pertinent provision in plaintiff's insurance policy read:
"Suit. No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within twelve months next after inception of the loss." (Emphasis supplied)[1]
Plaintiff allegedly discovered the roof damage on March 9, 1972, when water leaked through the ceiling of his den and onto the carpet. He found damage to several sections of his roof and immediately notified his agent, Ralph Alvarez, who called the information to General Adjustment Bureau, who in turn dispatched Nolan Allain to investigate the claim.[2]
When Allain visited the premises on March 27, plaintiff's son showed him the interior damage to the ceiling. Unaware that the roof had been repaired, Allain denied the claim on the basis that only windstorm damage was covered by the policy and he found no damaged areas in the roof above the den.
At plaintiff's request, Allain reinspected the roof on May 9, 1972, whereupon plaintiff informed him that the roof damage had been repaired and pointed out numerous shiny new shingles. Allain then told plaintiff to forward the bills, and he would submit them to the company for possible reconsideration of the previous denial.[3]
Plaintiff testified that he (at unidentified times) inquired by telephone many times about the claim and was told by Allain *897 that he was waiting to hear from the company. In this regard Allain testified without contradiction that he did not receive the bills from plaintiff until November, 1972.
The next event identifiable in the record by date was a letter dated April 5, 1973 (almost one month after the year had elapsed), from Allain to plaintiff, advising that he had written the company for instructions as to his claim. On May 7, 1973 Alvarez wrote to Allain, reminding him that three weeks earlier he had indicated the claim would be finalized and urging immediate action.
Thereafter, Allain took a written statement from plaintiff in September, 1973. The next month the insurer authorized Allain to offer to compromise the claim for 50% of the amount demanded. Plaintiff rejected the offer and eventually filed this suit in July, 1974.
Defendant filed an exception of prescription, which was tried and overruled by the trial court on the basis that the settlement offer (more than one year after the loss) invalidated the policy requirement that suit be filed within one year of the inception of the loss. After a subsequent trial on the merits, judgment was rendered in favor of plaintiff.
In this court defendant argues as to prescription that the trial court erred in excluding from evidence a signed non-waiver agreement because the document was undated. Defendant's purpose in obtaining plaintiff's consent to this agreement was to allow investigation and negotiation without an admission of liability or a waiver of any policy terms. We perceive no detriment to defendant, however, by the exclusion of this document. R.S. 22:651 (which was not called to the trial judge's attention) clearly provides the same protection that defendant sought in obtaining the agreement.[4]
We construe R.S. 22:651 to mean simply that mere investigation or negotiation do not alone constitute a waiver of an insurer's right to claim the benefits of an applicable policy provision. Nevertheless, such actions by an insurer can constitute part of an implied waiver or of a lulling process. Between the cases involving mere negotiations and those involving outright promises to pay, there are a myriad of cases in the hazy area, each of which must be decided on its own facts and circumstances.
Thus, the crucial determination in the present case is whether the overall actions of the insurer's claims adjuster, during the year after the casualty, led plaintiff to reasonably believe the insurer would not require compliance with the policy provision that suit must be filed within a year.[5]
*898 This record contains absolutely no proof, direct or circumstantial, that plaintiff withheld suit in reliance on any words or actions by the insurer or its adjuster. During the year following the loss there was no admission or recognition of liability; no assurances of payment; no late request for additional information or for time to investigate the claim further; no intentional delay of adjustment beyond the limitation period; and no prolonged or continuous negotiations, lasting through most of the limitation period, which might tend to hold out a reasonable hope of amicable adjustment. See cases annotated in 29 A.L.R.2d 636 (1953).
Furthermore, plaintiff did not even mention in his testimony that he was aware of the time limitation, nor did he give any reason for disregarding the limitation. His entire evidence of lulling during the year after the loss was testimony that the adjuster told him in May he would submit the bills and recommend payment. Apparently no one did anything further until plaintiff forwarded the bills six months later.
There was no further evidence (identifiable as to date) that the insurer made any other representations or took any other action (before the March anniversary date) on which plaintiff could have reasonably concluded the claim would be paid without the necessity of filing suit. Plaintiff vaguely testified as to telephone conversations in which the adjuster told him he was waiting to hear from the company, but there was no testimony these conversations took place before the adjuster's April, 1973 letter advising plaintiff he had written the company for instructions. Furthermore, these innocuous conversations (even if before the anniversary date) could not reasonably have induced plaintiff to withhold filing suit or seeking legal advice.
In order to find waiver or lulling in this case, we would be required to hold that mere pendency of a claim effects a waiver of the time limitation. This we are unwilling to do, particularly in view of the fact that the legislature established the time limitation and declared that the limitation would not even be affected by investigation or negotiation. The time limitation in the policy is not a period within which the insurer must deny the claim, but rather one in which the insured must assert the claim judicially. Unless the insurer in some manner leads the insured to reasonably believe the time limitation has been waived while the claim is under consideration or in some other way acts so as to induce the insured to withhold suit, the suit must be filed within the prescribed period even if the claim is still pending.
The case of Brocato v. Sun Underwriters Ins. Co. of N.Y., 219 La. 495, 53 So. 2d 246 (1951), relied on by plaintiff, is factually dissimilar to the present case. In the Brocato case the insurer admitted liability immediately after a severe hurricane, but because of the tremendous volume of claims to be adjusted did not reach agreement as to the amount of the loss within one year, although several adjusters were sent to examine the damage before and after the anniversary date. When suit was filed and prescription pleaded, the court held:
"(A)n admission of liability together with other acts and conduct on the part of the insurer, and other circumstances such as appear in this case, from which the insured is induced to believe that his claim would be settled without suit precludes the insurer from invoking the limitation clause of the policy."
Numerous cases have held that when liability is admitted but the parties cannot agree on the amount of the claim, the insurer cannot invoke the time limitation unless it has paid the portion admittedly due (or the amount it considered to be the reasonable value of the loss) and denied liability for the remainder without prejudice to the disputed portion of the claim. See 41 A.L.R.3d 1111 (1972). Indeed, in Bowler v. Fidelity and Cas. Co., 53 N.J. 313, *899 250 A.2d 580 (1969), the court held that this rule applies in the case of the insurer's mere silence as to liability when all or part of the claim is clearly due.
In the present case, however, the insurer did not admit liability at any time and in fact had originally denied liability. Furthermore, the evidence did not establish that all or part of the claim was clearly due.[6]
We are unable to conclude from this record either that defendant intentionally waived the time limitation contained in the policy or that plaintiff withheld suit in reasonable reliance on words or actions by the adjuster. Plaintiff's suit must therefore be dismissed as untimely filed.
Accordingly, the judgment of the trial court is reversed, and it is now ordered that judgment be rendered dismissing the suit.
REVERSED AND RENDERED.
REDMANN, J., dissents for the reasons assigned by GULOTTA, J.
GULOTTA, J., dissents and assigns reasons.
SCHOTT, J., concurs and assigns reasons.
GULOTTA, Judge (dissenting).
I dissent. It appears from the testimony that Allain lulled plaintiff into believing that he ultimately would be paid for the damage. While it is clear that plaintiff, to some extent, contributed to the delay, nevertheless, plaintiff indicated that he called Allain on several occasions without success and also contacted his insurance agent in order to obtain help on this claim. Ralph Alvarez, the insurance agent, stated that Allain did not say the claim would be dishonred. According to Alvarez, Allain conveyed the impression that he, Allain, was going to honor the claim. I am of the opinion that the record supports a conclusion that plaintiff was lulled into believing that he would be paid the full amount of his claim, and continued in that belief because of Allain's actions in not denying full payment until October, 1973, when a 50% offer was made. A suit filed in July, 1974, was timely since it was filed within one year from the date of the offer, October, 1973. See O'Neal v. American Equitable Assurance Company of New York, 162 So.2d 384 (La.App.2d Cir. 1964), writ refused, 246 La. 366, 164 So.2d 357 (1964), cited in Gremillion v. Travelers Indemnity Company, 256 La. 974, 240 So.2d 727 (1970). I would affirm the judgment of the trial court.
SCHOTT, Judge (concurring).
Since plaintiff's claim had prescribed under the pleadings he had the burden to prove that he was lulled into inaction by the defendant. The last contact plaintiff had with defendant was in November, 1972, three months before prescription date. Plaintiff put in no evidence to support his theory of being lulled during this three month period, and little if any evidence to support his theory of being lulled during the six months preceding.
I concur in the result reached by the majority.

ORDER
The court has considered the application for rehearing filed by Albert Blum, and
IT IS ORDERED that a rehearing be granted. The court will notify counsel of the time and date of rehearing and will allow opportunity for filing further briefs.
*900 STOULIG and SCHOTT, JJ., dissent from granting the rehearing.

ON REHEARING
We granted a rehearing to consider plaintiff's argument that the insurer held him "on a string", in that the insurer's inaction in holding the claim under consideration without acceptance or denial passively lulled him into withholding suit.
Arguably, circumstances may occur in which an insurer takes a claim under consideration, and the insured for some reasonable period thereafter delays consulting counsel (and incurring a fee) while awaiting an acceptance or denial of the claim. However, the record in this case does not establish that the period of plaintiff's delay in taking action in the first year after the casualty was a reasonable period.
After an initial denial of the claim based on the March damage, the insurer's agent reinspected in May and agreed to reconsider the claim. Insofar as this record shows, the only contact between the parties during the remaining ten months before the anniversary date was plaintiff's forwarding of the bills in November. While we agree that the insurer in exercising good business practices should have communicated a decision to its insured within a reasonable time after receiving the bills (and possibly subjected itself to penalties and attorney's fees in a timely filed suit by not doing so), we cannot say that the insurer's inaction between November and March either (1) constituted a waiver of the policy requirement of suit within one year, or (2) caused the insurer to change his position to his detriment, thereby estopping the insurer from asserting the policy provision. Indeed, plaintiff did not file suit until July, 1974, ten months after the insurer made the 50% compromise offer and 28 months after the casualty.
For these reasons and the reasons assigned in our opinion on original hearing, our judgment on original hearing is hereby reinstated. Each party is to bear its own costs.
REDMANN and GULOTTA, JJ., dissent.
STOULIG, Judge (concurring).
I concur for the reasons stated in the original opinion.
SCHOTT, Judge (concurring).
I concur in the result.
NOTES
[1] This wording is mandated by statute, R.S. 22:691 F. See also Gremillion v. Travelers Indem. Co., 257 La. 537, 240 So.2d 727 (1970).
[2] We here mention a conflict in dates as a circumstance not explained in the record. Alvarez's records showed he received the "immediate" notice from plaintiff on March 24. Allain's records showed Alvarez informed him that March 18 was the date of the loss. A written statement given by plaintiff to the adjuster 18 months later also lists March 18 as the loss date. Yet plaintiff's bill for roof repairs was dated March 9, the repairs took three or four days, and plaintiff marked the bill "Pd. ck. 1471. 3/12/72."
[3] In a point of minor conflict plaintiff testified Allain also said he would recommend that the claim be paid. Allain did not recall this statement, but did not deny making it.
[4] R.S. 22:651 provides:

"None of the following acts by or on behalf of an insurer shall be deemed to constitute a waiver of any provision of a policy or of any defense of the insurer thereunder:
"(1) Acknowledgment of the receipt of notice of loss or claim under the policy.
"(2) Furnishing forms for reporting a loss or claim, for giving information relative thereto, or for making proof of loss, or receiving or acknowledging receipt of any such forms or proofs completed or incompleted.
"(3) Investigating any loss or claim under any policy or engaging in negotiations looking toward a possible settlement of any such loss or claim."
[5] The insurer's actions after the year has elapsed may provide some indication of the effect of the insurer's actions during the year or may otherwise be of some evidentiary value. Nevertheless it is only the insurer's actions within the year after the loss (if those actions lull a claimant into detrimental inaction) that can give rise to an estoppel situation.

The insurer's actions after the year may also provide some evidence bearing on the determination of waiver. See Waiver and Estoppel in Louisiana Insurance Law, XXII La.L.Rev. 202 (1961). In this respect, however, we would be disinclined to discourage an insurer, presented with a claim after passage of the period for filing suit, from considering part payment of the defensible claim to a longtime loyal insured (such as plaintiff, who had been a policy holder for 20 years).
[6] The insurer originally defended on the basis that plaintiff had the damage repaired before giving notice, thus depriving it of an opportunity to inspect the damage or to secure lower estimates for repairs, and that the bill for roof repairs was dated prior to the stated date of the loss.