STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

03-1195

JOHN T. BENNETT

VERSUS

STATE FARM INSURANCE COMPANY

**********

APPEAL FROM THE
MARKSVILLE CITY COURT
PARISH OF MARKSVILLE CITY COURT, NO. C-02-3060
HONORABLEANGELO JOSEPH PIAZZA  III, CITY COURT JUDGE

**********

JOHN D. SAUNDERS
JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, John D. Saunders, and
Arthur J. Planchard,* Judges.

AFFIRMED IN PART; REVERSED IN PART.

DeWitt T. Methvin  Jr.
Attorney at Law
P. O. Box 1871
Alexandria, LA 71309
(318) 448-1632
Counsel for: Defendant/Appellant
State Farm Insurance Company

Anthony Francis Salario
P.O. Box 1200
Marksville, LA 71351
(318) 253-6587
Counsel for: Plaintiff/Appellee
John T. Bennett

---

* Judge Arthur J. Planchard, Jr., Retired, participated in this decision by appointment of the
Louisiana Supreme Court as Judge *Pro Tempore.*

**SAUNDERS, J.**

The issues presented in this appeal arise from a dispute over the coverage provided by a homeowners insurance policy.

**FACTS**

The Plaintiff, John Bennett, hereinafter "Mr. Bennett", had the property located at 153 Acton Road, Marksville, Louisiana, insured under a homeowners policy issued by the Defendant, State Farm Insurance Company, hereinafter "State Farm".

On February 26, 2001, a storm damaged portions of Mr. Bennett's home. Mr. Bennett duly reported the loss and on March 13, 2001, State Farm adjuster Gary Smith inspected the home and found damage to the home's siding, soffit, fascia and the awning leading from the carport to the house. On March 15, 2001, State Farm tendered to Mr. Bennett a check in the amount of $878.88 which represented the amount of the Mr. Smith's appraisal of the damages to Mr. Bennett's house less Mr. Bennett's policy's deductible of $1,000.00. In his testimony, Mr. Bennett admitted that he had no repair work done on his home as a result of the storm damage of October 26, 2001.

On January 21, 2002, Marksville was again hit by a storm. Mr. Bennett duly reported another loss to State Farm. On February, 21, 2002, State Farm adjuster David Bates inspected Mr. Bennett's home. Mr. Bates notified Mr. Bennett that the damage he was claiming was only the previous damage, for which he had already been paid, that had not been repaired. Therefore, State Farm made no payment in connection with Mr. Bennett's claim of January 21, 2002.

On October 4, 2002, Marksville was struck by Hurricane Lily. Mr. Bennett duly reported another loss to State Farm. State Farm adjuster Paul McKennel inspected Mr. Bennett's home. State Farm determined that the damage to Mr.

Bennett's home resulting from the hurricane were less than Mr. Bennett's deductible. Accordingly, State Farm made no payment in connection with Mr. Bennett's claim of October 4, 2002.

On December 19, 2002, Mr. Bennett filed suit against State Farm alleging that State Farm failed to adhere to its responsibilities under its policy of insurance with Mr. Bennett by not paying him for the damage to his insured property . Additionally, Mr. Bennett claimed that State Farm misled Mr. Bennett concerning the applicable prescriptive period operable in his dispute with State Farm.

Trial of this matter occurred on June 5, 2003, before the Honorable Angelo Joseph Piazza, City Court Judge, Marksville, Louisiana. After hearing the testimony, reviewing the evidence and applicable law and hearing the arguments of counsel the court found in favor of Mr. Bennett and made the following awards. The court awarded $6,500.00 for removing and replacing damaged aluminum siding and wood; $600.00 for debris removal; $3,000.00 for replacement of the carport; $1,415.00 for one-half the cost of leveling the home; $2,585.00 for replacing damaged windows; $2,500.00 for damages pursuant to La.R.S. 22:1220; $2,500.00 in attorney fees pursuant to La.R.S. 22:658 and all costs of the proceedings.

On July 20, 2003, State Farm timely appealed.

**ASSIGNMENTS OF ERROR**

1. The trial court erred in awarding $600.00 for debris removal and $3,000.00 for replacement of the carport as a result of the February 21, 2001, storm.

2. The trial court erred in awarding $1,415.00 for one-half the cost of leveling the home.

3. The trial court erred in awarding $2,585.00 for replacing windows when the evidence showed that only screens had been blown off of the home.

4. The trial court erred in awarding $2,500.00 in damages pursuant to La.R.S. 22:1220.

2

5.   The trial court erred in awarding $2,500.00 in damages pursuant to La.R.S. 22:658.

**LAW AND ANALYSIS**

The standard of review for findings of the trial court has been clearly established in this circuit. A court of appeal may not set aside a judge's factual finding unless that finding was manifestly erroneous or clearly wrong. *Stobart v. State, through Dep't. of Transp. & Dev.*, 617 So.2d 880 (La.1993). "Absent 'manifest error' or unless it is 'clearly wrong,' the jury or trial court's findings of fact may not be disturbed on appeal." *Sistler v. Liberty Mut. Ins. Co.*, 558 So.2d 1106, 1111 (La.1990). "If the trial court or jury's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Id.* at 1112. However, when appellate courts find that a reversible error of law or manifest error of material fact was made in the lower court, appellate courts are required to redetermine the facts de novo from the entire record and render a judgment on the merits. *McLean v. Hunter*, 495 So.2d 1298 (La.1986); *Otto v. State Farm Mut. Auto. Ins. Co.*, 455 So.2d 1175 (La.1984); *Ragas v. Argonaut S. W. Ins. Co.*, 388 So.2d 707 (La.1980).

**ASSIGNMENT OF ERROR NUMBER ONE**

State Farms first assignment of error concerns the trial court's awarding $600.00 for debris removal and $3,000.00 for replacement of Mr. Bennett's carport as a result of the February 21, 2001, storm.

The purpose of homeowners insurance is to afford the insured protection from property damage losses. However, in order to hold State Farm liable for this aspect of Mr. Bennett's claim, it must be clear that the replacement of the carport was

3

necessitated by an event covered under Mr. Bennett's policy of insurance with State Farm.

The first storm at issue in this case took place February 26, 2001. State Farm adjuster Gary Smith's report of March 13, 2001, indicates, among various other items of damage, that siding was blown off of the carport and that the covered canopy walkway between Mr. Bennett's house and the carport was, for all intents and purposes, destroyed. State Farm tendered $878.88 is satisfaction of this claim. Mr. Smith's report contains no evidence that the carport was so severely damaged as to necessitate replacement.

The second storm at issue in this case took place January 21, 2002. State Farm adjuster David Bates investigated Mr. Bennett's claim at this time and found no additional damage caused to Mr. Bennett's home as a result of this storm. In fact, Mr. Bennett admitted that he had made no repairs to his home between the occurrence of the storm of February 26, 2001, and the advent of the January 21, 2002, storm.

In letters dated February 20, 2002, and March 20, 2002, Mr. Bennett makes clear why no repairs were performed. The money tendered by State Farm, according to estimates obtained by Mr. Bennett, was inadequate to effectuate the repairs necessary. However, the letters to State Farm regarding the damages make no mention of a damaged carport. These letters only mention damaged siding and the destruction of the covered walkway between Mr. Bennett's home and carport.

The third storm at issue in this case was Hurricane Lily which struck Marksville on October 4, 2002. The State Farm adjuster's report finds only minimal damage to Mr. Bennett's property as a result of the hurricane. No mention is made of the damaged carport. Additional damage to Mr. Bennett's siding and windows was in evidence.

4

Ms. Laborde, the fiancé of Mr. Bennett, admitted that she had nothing to do with the adjustment process that occurred after the first two storms but was present for State Farm's inspection after Hurricane Lily. In her testimony she noted that she took issue with the adjuster because, in her opinion, his estimate was too low considering that siding and screens were blown all over the yard. She did not mention the damaged carport to the adjuster. When shown a photograph of the carport after it was allegedly damaged, Ms. Laborde stated that the photograph, although not showing the damage she claimed was present, was merely taken at a disadvantageous angle. However, Ms. Laborde did testify that a wind storm had damaged the carport, that it was replaced, and that it cost $600.00 to have the debris removed. Specifically, Ms. Laborde stated that siding was blown off of the carport and that a rear section of the carport was bent down from where the aluminum had fallen or been lifted up by the storm. Mr. Bennett testified concerning the damage caused by Hurricane Lily and indicated that Ms. Laborde was in a better position to know what damage was caused by that storm. Additionally, an invoice from K&T Metal Works and a check were provided showing that $3,000.00 was paid for replacement of the carport.

When findings are based on determinations regarding the credibility of witnesses, the manifest error--clearly wrong standard demands great deference to the trier of fact's findings. *Rosell v. ESCO*, 549 So.2d 840 (La.1989). The trial court was able to review the testimony of the parties; the documentary evidence showing that a carport was constructed and its cost; the evidence of State Farm which showed that the carport, in their opinion, was not damaged such as to necessitate replacement; as well as photographs that reflect that a "roof carport" supported by thin metal legs was constructed. Accordingly, our review of the record supports the conclusion that the trial court did not commit manifest error in awarding $3,000.00 for replacement of the

5

carport and $600.00 for the removal of debris.

**ASSIGNMENT OF ERROR NUMBER TWO**

State Farm's second assignment of error concerns the trial court's award of $1,415.00 to cover one-half the cost of leveling Mr. Bennett's home. We affirm the decision of the trial court.

It is clear that Mr. Bennett's home suffered damage as a result of the three storms. The majority of the damage centered on the destruction of the aluminum siding which was blown off of the house by the force of the various storm winds that struck Marksville in 2001 and 2002.

Accordingly, Mr. Bennett was entitled to have his insurer, State Farm, pay to have his siding and other covered losses repaired. The evidence showed that aluminum siding matching what was still located on the exterior walls of Mr. Bennett's home was unavailable because aluminum siding of that type and specification was no longer in manufacture. Therefore, in order to properly repair Mr. Bennett's home, the aluminum siding needed to be replaced with its modern equivalent, vinyl siding. The evidence also showed that in order for the new siding to properly fit the home must be level.

State Farm points to the exclusionary provision in its policy that indicates that repairs to the homes foundation is not covered. However, exclusionary provisions in insurance contracts are strictly construed against the insurer. *Ledbetter v. Concord Gen. Co.*, 95-0809 (La.1/6/96), 665 So.2d 1166, *modified on other grounds*, 95-0809 (La.4/18/96), 671 So.2d 915. The burden is on the insurer to prove that a loss comes within a policy exclusion. *La. Maint. Serv., Inc. v. Certain Underwriters at Lloyd's of London*, 616 So.2d 1250 (La.1993).

Although the provision at issue arguably excludes coverage for leveling the

6

house, the leveling of the home was incidental to the repair of Mr. Bennett's damaged siding. In order to repair the siding correctly the home had to be leveled. If the home were not level the siding would not fit correctly and it would be unable to perform its intended purpose of protecting the home.

We note that our holding does harm to the effectiveness of the exclusionary provision under the circumstances of this case, however, we feel that where the duty to replace the siding conflicts with the exclusionary clause the specific and affirmative duty to repair is controlling. La.Civ.Code art. 2052; La.Civ.Code art. 2054.

**ASSIGNMENT OF ERROR NUMBER THREE**

State Farm's third assignment of error concerns the trial court's award of $2,585.00 to replace windows in Mr. Bennett's home. As discussed is assignment of error number two, Mr. Bennett's home suffered damages as a result of the three storms that required the replacement of the home's aluminum siding with vinyl siding. The evidence showed that in order to effectuate a proper repair it was necessary to replace Mr. Bennett's windows in order to ensure that the new siding fit properly and was able to protect the home from the elements. Accordingly, we find that the window replacement was an incidental but necessary repair effectuated in order to ensure the replacement siding's functionality.

**ASSIGNMENTS OF ERROR NUMBERS FOUR AND FIVE**

State Farm's final assignments of error concerns the trial court's award of $2,500.00 in penalties pursuant to La.R.S. 22:1220 and $2,500.00 in attorney fees pursuant to La.R.S. 22:658.

Mr. Bennett bases his claims for penalties and attorney fees on the fact that his policy of insurance was cancelled as a result of his numerous homeowners claims; that State Farm failed to fairly adjust his claims; and that State Farm misled him regarding

7

the applicable prescriptive period operable in this dispute, thus entitling him to penalties and attorney fees pursuant to La.R.S. 22:1220 and La.R.S. 22:658.

Louisiana Revised Statute 22:1220 provides:

A. An insurer, including but not limited to a foreign line and surplus line insurer, owes to his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both. Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach.

B. Any one of the following acts, if knowingly committed or performed by an insurer, constitutes a breach of the insurer's duties imposed in Subsection A:

. . . .

(4) Misleading a claimant as to the applicable prescriptive period.

. . . .

C. In addition to any general or special damages to which a claimant is entitled for breach of the imposed duty, the claimant may be awarded penalties assessed against the insurer in an amount not to exceed two times the damages sustained or five thousand dollars, whichever is greater. Such penalties, if awarded, shall not be used by the insurer in computing either past or prospective loss experience for the purpose of setting rates or making rate filings.

Louisiana Revised Statute 22:658 provides:

A. (1) All insurers issuing any type of contract, other than those specified in R.S. 22:656, R.S. 22:657, and Chapter 10 of Title 23 of the Louisiana Revised Statutes of 1950, shall pay the amount of any claim due any insured within thirty days after receipt of satisfactory proofs of loss from the insured or any party in interest.

. . . .

B. (1) Failure to make such payment within thirty days after receipt of such satisfactory written proofs and demand therefor, as provided in R.S. 22:658(A)(1), or within thirty days after written agreement or settlement as provided in R.S. 22:658(A)(2) when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of ten percent damages on the amount found to be due from the insurer to the insured, or one thousand dollars, whichever is greater,

8

payable to the insured, or to any of said employees, together with all reasonable attorney fees for the prosecution and collection of such loss, or in the event a partial payment or tender has been made, ten percent of the difference between the amount paid or tendered and the amount found to be due and all reasonable attorney fees for the prosecution and collection of such amount.

. . . .

Neither statute provides for the imposition of penalties or attorney fees for the cancellation of a policy of insurance. Therefore, penalties and attorney fees are unavailable on those grounds.

Louisiana Revised Statute 22:1220 does not provide for the imposition of attorney fees. Louisiana Revised Statute 22:658 does provide for the imposition of attorney fees, but does not allow attorney fees to be assessed against an insurer for the failure to fairly adjust a claim or for misleading a claimant as to the applicable prescriptive period. Therefore, attorney fees are unavailable in this instance

However, La.R.S. 22:1220(A) requires an insurer to fairly and promptly adjust its insured's claims. Furthermore, La.R.S. 22:1220(B)(4) allows a court to impose penalties if an insurer misleads a claimant as to the applicable prescriptive period. Therefore, we will analyze whether the conduct of State Farm supports the trial court's award of penalties under La.R.S. 22:1220(A) and (B)(4).

As stated above, the insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both. La.R.S. 22:1220(A). A right of action is available to both insureds and third-party claimants under La.R.S. 22:1220. However, only the commission of one of the specific acts listed in La.R.S. 22:1220(B)(1)-(5) will support a private right of action under the statute. *Theriot v. Midland Risk Ins. Co.*, 95-2895 (La. 5/20/97), 694 So.2d 184; *Smith v. Midland Risk Ins. Co.*, 29,793 (La.App. 2 Cir. 9/24/97), 699

9

So.2d 1192. Furthermore, La.R.S. 22:1220 is a penal statute and must be strictly construed, *Harrington v. Cato Corp.*, 32,055 (La.App. 2 Cir. 6/16/99), 740 So.2d 732, and the insurer has the right to litigate claims without being subjected to damages and penalties. *Darby v. Safeco Ins. Co.*, 545 So.2d 1022 (La. 1989).

In order to determine whether the statements of State Farm's adjuster were sufficient to mislead Mr. Bennett as to the applicable prescriptive period it is necessary to address what must be done to interrupt prescription other than filing suit within the prescriptive period.

Prescription is interrupted when one acknowledges the right of the person against whom he had commenced to prescribe. La.Civ.Code art. 3464. Interruption by acknowledgment may be oral, in writing, formal, informal, express or tacit. *Gulf Coast Bank and Trust Co. v. Eckert*, 95-156 (La.App. 5 Cir. 5/30/95), 656 So.2d 1081, *writ denied*, 95-1632 (La.10/6/95), 661 So.2d 474. The acknowledgment need not be of a certain amount of damages, only of the defendant's responsibility and plaintiff's right against that defendant. *Lima v. Schmidt*, 595 So.2d 624 (La.1992).

We note that the acknowledgment need not be in the form of a compromise agreement and, for that matter, it need not be in any particular form. *Flowers v. U.S. Fid. & Guar. Co.*, 381 So.2d 378, 382 (La. 1979). Additionally, a tacit waiver or interruption of prescription may be found if the insurer; (1) continues negotiations, thereby inducing the insured to believe the claim will be settled or not contested, (2) makes an unconditional offer of payment, or (3) performs acts of reparation or indemnity. *Lima v. Schmidt*, 595 So.2d 624, 634 (La.1992); *Griffin v. Audubon Ins. Co.*, 94-0233, (La.App. 1 Cir. 12/22/94), 649 So.2d 72, 74, *writ denied*, 95-0229 (La.3/17/95), 651 So.2d 279. However, unless the insurer in some manner leads the

insured to reasonably believe the time limitation has been waived while the claim is under consideration or in some other way acts so as to induce the insured to withhold suit, the suit must be filed within the prescribed period even if the claim is pending. *Blum v. Cherokee Ins. Co.*, 336 So.2d 894, 898 (La.App. 4 Cir. 1976).

The loss germane to this assignment of error was caused by the storm of February 26, 2001, suit was not filed until December 19, 2002. Since the petition shows on its face that the prescriptive period has run, the burden is on the plaintiff to prove interruption of prescription. *Spott v. Otis Elevator Co.*, 601 So.2d 1355 (La. 1992); *Andrus v. Patton*, 394 So.2d 714 (La.App. 3 Cir. 1981); *Emery v. Cabral*, 400 So.2d 340, 342 (La.App. 4 Cir.), *writ denied*, 405 So.2d 533 (La.1981).

We find that the Plaintiff is unable to meet this burden considering the facts of this case. State Farm's adjuster told Mr. Bennett that he had two years in which to effectuate any additional repairs to his home and that if State Farm subsequently found the repairs legitimate Mr. Bennett would be reimbursed for those costs. At no time did the claims adjuster of State Farm, even in the most general terms, discuss with Mr. Bennett any prescriptive period. State Farm's adjuster made no acknowledgment of State Farm's intention to waive any prescriptive period nor did State Farm's adjuster acknowledge any right or rights Mr. Bennett may have had concerning his claims vis-a-vis State Farm. State Farm in no way performed acts that would have tacitly acknowledged to Mr. Bennett that State Farm was waiving its rights under the prescriptive period. State Farm did not continue negotiations, make an unconditional offer of payment, or perform any acts of reparation or indemnity regarding the loss occasioned by the storm of February 26, 2001. State Farm's adjuster's statements simply could not lead the insured to reasonably believe the time limitation had been waived while the claim was under consideration nor did State Farm in some other way

11

act so as to induce the insured to withhold suit in this instance.

Therefore, we find that the statements of State Farm's claims adjuster were not such as to induce Mr. Bennett to believe that he had two years in which to file his claim as opposed to the one year period provided for in his policy of insurance with State Farm. Therefore, we reverse and hold that it was error for the trial court to award penalties and attorney fees in this case.

**CONCLUSION**

We affirm the trial court's awarding $6500.00 for the repair of Mr. Bennett's damaged siding, the $3,000.00 replacement cost of the carport, $600.00 cost to remove the debris of the destroyed covered walkway, the $1,415.00 for one-half of the cost required to level Mr. Bennett's home and the $2,585.00 to replace the windows in Mr. Bennett's home. We reverse the trial court's $2,500.00 award of penalties pursuant to La.R.S. 22:1220 and the $2,500.00 award of attorney fees pursuant to La.R.S. 22:658. Therefore, we award Mr. Bennett $14,100.00, all costs of this appeal are to be assessed against State Farm.

**AFFIRMED IN PART; REVERSED IN PART**