STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

06-547

ESTATE OF FRANK DEGRAAUW

VERSUS

TRAVELERS INSURANCE COMPANY

**********

APPEAL FROM THE
ABBEVILLE CITY COURT
PARISH OF VERMILION, NO. 13927
HONORABLE EDWARD B. BROUSSARD, CITY COURT JUDGE

**********

ULYSSES GENE THIBODEAUX
CHIEF JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Jimmie C. Peters, and J. David Painter, Judges.

AFFIRMED.

Roger Chadwick Edwards, Jr.
Edwards & Edwards
P. O. Box 217
Abbeville, LA 70511-0217
Telephone:  (337) 893-2884
COUNSEL FOR:
        Appellant - David M. DeGraauw

Frank Simo Slavich, III
Perret, Doise
P. O. Drawer 3408
Lafayette, LA 70502-3408
Telephone  (337) 262-9000
COUNSEL FOR:
        Appellee - Travelers Insurance Company

THIBODEAUX, Chief Judge.

Plaintiff-appellant, David M. DeGraauw (DeGraauw), the court-appointed succession representative for the estate of deceased homeowner, Frank DeGraauw, sued the decedent's homeowner's insurer, The Standard Fire Insurance Company (Standard Fire),[1] for breach of contract. The suit claimed that Standard Fire failed to pay the replacement costs for roof damage as covered by the policy. The trial court granted Standard Fire's peremptory exception of prescription. DeGraauw appeals. For the following reasons, we affirm.

I.

**ISSUE**

Did the trial court erroneously apply La.R.S. 22:691(F) to sustain the defendant's exception of prescription and dismiss the plaintiff's lawsuit on his claim for insurance proceeds?

II.

**FACTUAL BACKGROUND**

On October 3, 2002, the Abbeville, Louisiana home of decedent, Frank DeGraauw, was damaged by Hurricane Lili. Mr. DeGraauw possessed a homeowner's insurance policy issued by "The Standard Fire Insurance Company, One of the Travelers Property Casualty Companies," which covered losses to his residence. On October 16, 2002, Mr. DeGraauw filed a claim with Standard Fire. On November 8, 2002, an adjuster for the insurer prepared a repair estimate for the damages in the amount of $9,778.96. The estimate was itemized and included

---

[1]Standard Fire Insurance Company is a subsidiary of Travelers Insurance Company and is the company that issued the homeowner's policy at issue. Standard Fire is the only defendant that has appeared and answered the suit.

estimates of the costs for the repair of the roof, as well as for the repair of other damage to the dwelling.

On or about November 9, 2002, the insurer tendered to Mr. DeGraauw a payment in the amount of $6,176.63, which was the balance due after deductions of the applicable $1,000.00 deductible and the recoverable depreciation in the amount of $2,602.33. In a letter issued to Mr. DeGraauw from the insurer, he was advised that his loss would be settled in full, in accordance with the policy's terms, once he provided notification to the insurer of the completion of the repairs or replacement of the damaged property. Standard Fire asserts that it received no further contact regarding the loss until June 2004.

Mr. DeGraauw passed away on May 16, 2004, and his son, David M. DeGraauw, was appointed as the succession representative. In June 2004, DeGraauw notified Standard Fire that his father had performed temporary repairs to the roof after receiving the first portion of the insurance settlement; however, those repairs were insufficient, and a new roof had to be installed at an additional total cost of $16,700.06. He requested reimbursement for these costs. On June 26, 2004, Standard Fire denied this request. On June 30, 2004, it offered to tender the previously withheld depreciation of $2,602.33. DeGraauw rejected this offer. On March 23, 2005, Standard Fire tendered a check to DeGraauw in the amount of the withheld depreciation, which DeGraauw has not negotiated.

On April 11, 2005, DeGraauw filed suit, alleging that Standard Fire breached the insurance contract. In the suit, he asserted that the initial payment relative to roof damage from the insurance company that was received by his father was intended to cover only temporary roof repairs as evidenced by the insurer's estimate. He argued that because these repairs were insufficient the insurance

2

company remained obligated to settle the loss under the "replacement cost coverage" terms of the policy.

Standard Fire answered and filed various exceptions, including an exception of prescription. Standard Fire asserted that the policy allowed one year from the date of loss to file lawsuits against the insurer and that DeGraauw's suit was prescribed because it was filed on April 11, 2005, two years and six months after the October 3, 2002 date of loss.

The trial court granted the exception. In its ruling, the trial court found that the suit was prescribed because it was filed more than one year after the one-year prescriptive period had run. The court rejected DeGraauw's contention that the insurance company's original roof damage estimate addressed only temporary roof repairs. The court also reasoned that there was no evidence that the insurer had acted to waive the prescriptive period by any subsequent acknowledgment of the claim, nor was there evidence that the insurer acted to interrupt the running of the prescriptive period. The trial court added also that the claim for replacement of the roof constituted a new claim under the policy.

III.

## LAW AND ARGUMENT

### *Prescription*

Louisiana Revised Statutes 22:691 sets forth the standard provisions that are to be included in all standard fire insurance policies issued in Louisiana. Louisiana Revised Statutes 22:691(F) requires that the following limitation regarding the filing of lawsuits be included in standard fire policies:

> **Suit**—No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been

complied with, and unless commenced within twelve months next after the inception of the loss.

The policy issued to Mr. DeGraauw restates this limitation, as such:

SECTION 1 – CONDITIONS

. . . .

**8.** **Suit Against Us.** No action can be brought unless the policy provisions have been complied with and the action is started one year after the date of loss.

DeGraauw has asserted that the trial court erroneously interpreted this suit limitation clause as that which establishes a prescriptive period and contends that this court should decline to adhere to prior jurisprudence interpreting it as such. DeGraauw asserts that because of the absence of any language in La.R.S. 22:691(F) designating this provision as a prescription clause and because this section of the statute is a provision of broader legislation intended to create a standard form insurance contract, the suit limitations provision is not that which rises to the level of a prescriptive period.

Rather, DeGraauw argues that this one-year limitations clause is simply a contractual provision that is to be read in pari materia with the other provisions of the policy to determine if it is enforceable under the circumstances presented. When interpreted in this manner, he states that an inherent conflict and/or ambiguity between the lawsuit limitations provision and the policy's "Loss Settlement" provision is apparent such that it should render the application of the suit limitations clause unenforceable.

The Loss Settlement provision of the policy states:

SECTION 1 – CONDITIONS

**3.** **Loss Settlement.** Covered property losses are settled as follows:

4

. . . .

> (4) We will pay no more than the actual cash value of the damage until actual repair or replacement is complete. Once actual repair or replacement is complete, we will settle the loss according to the provisions of b.(1) and b.(2) above.

DeGraauw claims that this provision means that a loss will be settled in full once the actual repairs or replacement of the damaged property is completed, yet it provides no express time limitation for the completion of those repairs. He contends that this conflicts with the lawsuit limitations clause because the right to sue for recovery on a claim becomes time-barred by law within one year of the date of the applicable loss, regardless of whether repairs have been completed. DeGraauw argues that, under the rules of contractual interpretation, a conflict of this nature should be resolved in favor of the insured and the suit limitations clause should be deemed inoperative. Otherwise, he argues that the language of the policy provides an unfair escape clause for insurers, giving them the opportunity to avoid paying claims in full, even if neither party has, prior to that time, breached the insurance contract. This argument is meritless.

First, we reject DeGraauw's assertion that the trial court erroneously interpreted and applied the insurance policy's one-year limitations period as a prescriptive clause. By definition, liberative prescription is "a mode of barring of actions as a result of inaction for a period of time." La.Civ.Code art. 3447. Louisiana Revised Statutes 22:691(F) is a prescriptive period established by legislation pursuant to La.Civ.Code art. 3457. In *Gremillion v. Travelers Indemnity Co.*, 240 So.2d 727, 256 La. 974 (1970), the supreme court wrote that the twelve-month limitations period for filing actions that was established and mandated by La.R.S. 22:691(F) is a valid prescriptive period.

Second, we reject the notion that the prescriptive period should be ignored because it is in conflict with the loss settlement provision of the policy. The one-year time limitation in the suits provision is one in which the insured must assert his or her claim judicially, but it does not require the insured to settle the claim within this time period. La.R.S. 22:691(F); *Blum v. Cherokee Ins. Co.*, 336 So.2d 894 (La.App. 4 Cir. 1976). Consequently, even if the claim is still pending, unless the insurer in some manner leads the insured to reasonably believe that the time limitation has been waived, the insured must file any lawsuit within the specified one-year time limitation. *See Blum*, 336 So.2d 894; *Stephens v. Audubon Ins. Co.*, 27-658 (La.App. 2 Cir. 12/6/95), 665 So.2d 683, *writ denied*, 96-66 (La. 2/28/96), 668 So.2d 363. Moreover, we are mindful that the contents of the policy constitute the law between the parties, which will be enforced as written if the terms are clear and express the intent of the parties. *Stephens*, 665 So.2d 683.

Now turning to the application of the one-year prescriptive period to the specific facts of this case, we note that prescription begins to run from the date of the loss. *Gremillion*, 240 So.2d 727. According to the record, the date of the loss at issue—damage to the roof—occurred on October 3, 2002. The lawsuit was filed on April 11, 2005, more than two years after the date of the loss. Therefore, we find, as did the trial court, that the suit is prescribed on its face. The burden thus shifted to DeGraauw to show that the action was not prescribed. *See Cichirillo v. Avondale Indus., Inc.*, 04-2894, 04-2918 (La. 11/29/05), 917 So.2d 424.

Prescription may be defeated if it can be shown that the period was interrupted or that the right to plead prescription was renounced. *See Lima v. Schmidt*, 595 So.2d 624 (La.1992). DeGraauw attempted to satisfy this burden by arguing that the insurer interrupted the prescriptive period by twice acknowledging

6

that the policy covered the repair or replacement of the roof. According to DeGraauw, the acts of acknowledgment were the insurer's tender of the first portion of the insurance settlement on or about November 9, 2002, and the insurer's act of tendering the withheld depreciation amount on March 23, 2005. We disagree.

Prescription may be legally interrupted when one acknowledges the rights of the person against whom he had commenced to prescribe. La.Civ.Code art. 3464. The supreme court has stated that, "[s]ubstantively, acknowledgment is the recognition of the creditor's right or obligation that halts the progress of prescription before it has run its course . . . ." *Lima*, 595 So.2d at 631. The legal effect of acknowledgment is the erasing of the time that has accrued, with prescription recommencing anew from the date of interruption. *See id.* Acknowledgment that is sufficient to interrupt prescription does not have to be in any particular form. *See Bennett v. State Farm Ins. Co.*, 03-1195 (La.App. 3 Cir. 3/24/04), 869 So.2d 321. "The acknowledgment need not be of a certain amount of damages, only of the defendant's responsibility and plaintiff's right against that defendant." *Bennett*, 869 So.2d at 329 (citing *Lima*, 595 So.2d 624).

In regard to an insurer's acknowledgment of a claimant's rights sufficient to interrupt the running of prescription, we have stated before that a tacit waiver or interruption of prescription may be found to have occurred if the insurer "(1) continues negotiations, thereby inducing the insured to believe the claim will be settled or not contested, (2) makes an unconditional offer of payment, or (3) performs acts of reparation or indemnity." *Id*. at 330 (citations omitted). However, we further stated:

> [U]nless the insurer in some manner leads the insured to reasonably believe the time limitation has been waived while the claim is under consideration or in some other way acts so as to induce the insured to withhold suit, the

suit must be filed within the prescribed period even if the claim is pending. *Blum v. Cherokee Ins. Co.*, 336 So.2d 894, 898, (La.App. 4 Cir. 1976).

After reviewing the record, we find no evidence of any direct or tacit actions on the part of the insurer to interrupt the running of the one-year prescriptive period. Specifically, we find no evidence in the record that Standard Fire took any action to induce either the deceased Mr. DeGraauw or his succession representative to delay the filing of any lawsuit. In fact, there is no indication in the record that there were ever any discussions, orally or in writing, between the insurer and the decedent, or the decedent's succession representative, or any legal counsel for the insured or his estate until after the period had run. Once prescription runs, it cannot be interrupted. *Lima*, 595 So.2d 624. We also find it significant that, for a span of almost two years following the initial payment by the insurance company, there was no contact between the parties about the claim.

In addition, we do not find that the insurer's negotiations with DeGraauw commencing in June 2004 or the insurer's subsequent tender of the withheld depreciation amount of $2,602.33 on March 23, 2005, were acts of renunciation of the insurer's right to plead prescription. La.R.S. 22:651.[2] Renunciation by definition

---

[2]Louisiana Revised Statutes 22:651 states:

**§ 651. Claim administration not waiver**

None of the following acts by or on behalf of an insurer shall be deemed to constitute a waiver of any provision of a policy or of any defense of the insurer thereunder:

(1) Acknowledgment of the receipt of notice of loss or claim under the policy.

(2) Furnishing forms for reporting a loss or claim, for giving information relative thereto, or for making proof of loss, or receiving or acknowledging receipt of any such forms or proofs completed or incomplete.

(3) Investigating any loss or claim under any policy or engaging in negotiations looking toward a possible settlement of any such loss or claim.

8

"obliterates the effect of prescription that has run" and is subject to more strict requirements than acknowledgment. *Lima*, 595 So.2d at 631. It has to be "clear, direct, and absolute and manifested by words or actions of the party in whose favor prescription has run." *Id*. When renunciation occurs, a new and binding, unilateral obligation to pay or perform has been created by the debtor after prescription has accrued. *See id*. This has not occurred in this case.

Accordingly, we find no legal or manifest error in the trial court's judgment sustaining the exception of prescription.

IV.

**CONCLUSION**

The judgment sustaining the exception of prescription is affirmed. Costs of this appeal are assessed to the plaintiff-appellant, David M. DeGraauw.

**AFFIRMED**.

9